## N. Y. COMMON PLEAS.

THE GROCERS' BANK, appellant, agt. RICHARD G. MURPHY, respondent.

*New York Stock Exchange — a seat therein is property and may be applied to satisfy a judgment against its owner.*

A seat in the New York Stock Exchange is property that may be applied toward satisfaction of a judgment against its owner. Per BEACH, J. (VAN BRUNT, J., dissenting.)

*General Term, March,* 1881.

THE plaintiff recovered a judgment against the defendant on the 18th February, 1880, and execution was immediately issued to the sheriff of this county, where the defendant resides. Subsequently an order was granted, upon the usual affidavit, requiring the defendant to appear before one of the judges of this court to make discovery on oath concerning his property to be applied toward satisfaction of the judgment. This proceeding was taken under subdivision two of section 292 of the Code of Procedure. It appeared that the defendant owned a seat in the New York Stock Exchange. The

motion was thereafter denied, and the appeal is by the plaintiff from the order.

*Ten Broeck & Van Orden*, for appellant.

*Rastus S. Ransom*, for respondent.

BEACH, *J.*— If the judgment debtor is alleged to have property which he unjustly refuses to apply towards the satisfaction of the judgment, the statute provides this mode of inquiry, and, upon the fact appearing, the judge may order it applied, if not exempt from execution and not earnings necessary for a family wholly or in part supported by the debtor's labor. If, therefore, the seat in the Stock Exchange is property, the plaintiff has a right to its application. The learned justice below held it was not; and his conclusion is supported by statements contained in opinions given by the courts of a sister state whose expressions are entitled to great respect. In *Thompson* agt. *Adams et al.* (*Weekly Notes of Cases, vol.* 7, *No.* 18) plaintiff claimed to be the equitable owner of the seat of a deceased member in the Philadelphia Stock Exchange, he having advanced the money for its purchase, the debt being unpaid. He therefore demanded the whole proceeds of sale, or to share equally with creditors who were members of the board. The court held the moneys applicable, first, in payment of indebtedness to members, which exhausted the fund. ELCOCK, J., before whom the case was tried, said : " A seat in the board is a species of property encumbered with conditions. It is not a matter of absolute purchase, for it never was freed from the conditions and duties of the constitution and by-laws." Upon appeal the court say : " The seat is not property in the eye of the law; it could not be seized in execution for the debts of the members."

In *Pancoast* agt. *Gowen et al.*, *garnishees* (*Weekly Notes of Cases, vol.* 7, *No.* 29), the question before the court was whether or not the seat could be reached by an attachment

- execution, and it was held it could not be levied upon under that process or a *fi. fa.* The above cases are somewhat fully quoted to show that the question of the seat being property was not directly before the court for decision in either. The first related to the disposition of the proceeds of sale, and the second to the power of certain process to reach the property.

In *Ritterband* agt. *Baggett* (42 *Superior Court R.*, 556); *Hyde* agt. *Woods* (4 *Otto*, 524), and *In Matter of Ketcham, Bankrupt* (*Daily Register, February* 9, 1880), the point was clearly involved. These adjudications decide the seat to be property, and consequently applicable to debts. Justice· CHOATE's opinion, *In re Ketcham* (*supra*), exhausts the subject, and little, if aught, can be added here. The learned court below suggests, as one reason for its conclusions, that the rights of membership, the privilege, seat or whatever else it may be termed, does not fall within any definition of property. This may be so, and still, if the modes of doing business in the present time have given rise to property rights bearing no similarity to those heretofore existing, and consequently undefined, the law under which the question at issue arises will still apply to them, if upon investigation they are found to possess qualities and characteristics common to recognized subdivisions of property. The controlling feature appurtenant to a seat in the Stock Exchange is that it may be bought and sold subject to the rules of the association, and in case of the owner's death a sale is made by the Exchange and the proceeds distributed. Herein exists the difference between it and membership of a social club. The latter can neither be bought nor sold. It has no general value or marketable quality. There is no provision for transfer, and nothing remains after a member's death. It is in itself but a purely personal right dependent upon election and terminated in every way by demise. There is but one condition common to both — the necessity for an election. In the former, one desiring membership and acceptable to the committee on admissions, pays money for the seat, which thereafter represents whatever

sum was needful for its purchase. That amount is withdrawn from the assets of the purchaser, and, if the conclusion of the court below is correct, has been, without warrant of law, so changed in its character as to be relieved from the obligation resting upon all property, to wit, liability to creditors of its possessor. If such a result may be attained, the effort of active imagination cannot circumscribe the associations human ingenuity will produce to thus transmute veritable assets into intangible and yet most substantial and valuable shadows. Thus would follow the nullification of the legal principle which makes the debtor's possessions liable to his creditors, and honest claimants would be remediless because of the insufficiency of a statute enacted to facilitate the collection of just demands. There may be minor difficulties in the practical application of the statute, but these, in my opinion, are easily surmounted. Probably an order appointing a receiver, containing directions for the judgment debtor to do whatever may be deemed needful to transfer the seat under the rules of the Exchange, would accomplish the result sought. This, however, is properly within the province of the court below. The right existing, the law is sufficiently comprehensive and powerful for its enforcement.

The order must be reversed, with costs.

VAN BRUNT, J. (dissenting).— The opinion of the learned justice, by whom the question involved in this proceeding was determined at the special term, seems to me to demonstrate with a reasonable degree of certainty that membership in the New York Stock Exchange cannot be treated as property or a right to property, and that but little, if anything, can be added to the reasons assigned in that opinion for this conclusion which will add, in any material respect, to its conclusiveness. It seems to me that the difficulty which is encountered in the consideration of the proposition involved arises from the fact that under certain circumstances memberships of the stock exchange have realized the large sum of $30,000, and

that one is apt to be influenced in his consideration of the subject by the idea that a party should not be allowed to hold beyond the reach of his creditors that which had, under some circumstances, produced so large a sum of money. If membership in the New York Stock Exchange was worth merely a nominal amount, I think that we would have no difficulty in coming to the conclusion that it was a mere personal privilege and was not property or a right to property.

A brief consideration of the organization of the stock exchange seems to illustrate this proposition. The New York Stock Exchange is a voluntary association — not an incorporation — of a number of business men for the purpose of facilitating the transaction of their business. They have adopted a certain constitution and by-laws for the government of this association, and the relation which they bear to themselves and the outside world is that of a copartnership formed amongst a large body of men for certain specific purposes, and having the rights, privileges and duties of each copartner distinctly fixed by the articles of copartnership. By reason of this aggregation of men engaged in a particular business, and by reason of the facilities and securities which this combination affords to its members, the privilege of forming one of this copartnership or association becomes valuable. The copartnership, as such, owns no property and has no assets which could possibly be reached by any process of law. The sole thing which the defendant holds, and the sole right which he possesses, is his membership of this copartnership. I know of no principle of law which can possibly compel a debtor to assign to any person his naked right of membership in a firm. It is true that where the firm have property and assets, the interest of the debtor in such property and assets may be reached by the creditor; but his membership of the firm cannot be disturbed unless his copartners choose to dissolve the firm or to claim the firm dissolved by reason of the insolvency of one of the copartners, and then no right of partnership which the insolvent partner had in the firm could be possibly

transferred to another, and yet this is precisely what is sought to be done by this proceeding. It is sought to transfer to some other party, by process of law, the membership of the defendant in this voluntary association.

It is urged that the constitution of the New York Stock Exchange contemplates the transfer of membership. Without any provision in the constitution or by-laws, undoubtedly any one member might transfer his membership to another, by and with the consent of all the members of the association, in the same manner as one partner might transfer his membership in the copartnership by and with the consent of his copartners; and in the constitution of the New York Stock Exchange there has been inserted a provision by which a member may, with the consent of a certain committee, transfer his membership instead of requiring, as they might have done, the assent of all the members of the stock exchange. The same could be done in articles of copartnership. A., B. and C. might enter into a copartnership by which either of the partners might sell out his membership in the concern, and introduce a new partner upon the consent of a majority of the firm, and such an agreement would be binding; and this is the sole privilege which is conferred by the constitution of the New York Stock Exchange upon its members.

There seems to be no way in which the court can enforce any process in reference to the transfer of the membership in the stock exchange.

It is true that the court may make an order that a member assign his membership, but an assignment of membership executed by a member does not transfer such membership; it requires something beyond that in order that such membership can or may be transferred; it requires the assent of the New York Stock Exchange in the manner approved by its constitution or articles of copartnership. The attempt might be made which would result perhaps in a destruction of the rights of the defendant, but no rights whatever can be conferred upon another person.

For these reasons, as well as for those so ably expressed by the learned judge in his opinion at special term, I am of the opinion that no creditor can reach this personal privilege of the defendant, and the order should be affirmed.

## SUPREME COURT.