[No. 11573.   Department One. — March 8, 1889.]

FRITZ HABENICHT, RESPONDENT, v. A. H. LISSAK, APPELLANT.

EXECUTION— SALE OF SEATS IN STOCK AND PRODUCE EXCHANGE— SUPPLE MENTARY PROCEEDINGS — RECEIVER. — Seats in the San Francisco Stock and Exchange Board, and in the San Francisco Produce Exchange, though clogged with conditions and restrictions, constitute property within the reach of judgment creditors of the owner, and which should be applied as other property of a debtor to the payment of his debts. An order may be properly made, upon proceedings supplementary to execution against the owner of such seats, appointing a receiver, and directing the execu- tion debtor to make an assignment thereof to him, and empowering the receiver to sell the same to satisfy the judgment.

APPEAL from an order of the Superior Court of the city and county of San Francisco, in proceedings supple- mentary to execution, appointing a receiver, with power to sell, and directing assignments to him of seats in a stock exchange and a produce exchange owned by the debtor.

The facts are stated in the opinion of the court.

*Henry E. Highton*, for Appellant.

*Pillsbury & Blanding*, and *Horace G. Platt*, for Respond- ent.

PATERSON, J.—In March, 1884, the plaintiff recovered judgment against defendant for several thousand dollars. About a year later, a writ of execution was issued on the judgment, and placed in the hands of the sheriff, by whom it was afterward returned wholly unsatisfied. In June, 1885, the proceedings to be reviewed herein—proceed- ings supplementary to execution—were instituted by the plaintiff upon the unsatisfied judgment in his favor. Upon the examination of the judgment debtor, it was disclosed that he owned a seat or membership in the San Francisco Stock and Exchange Board, and another seat or membership in the San Francisco Produce Exchange.

In September, 1885, upon due notice given, plaintiff made a motion for the appointment of a receiver of the two seats above named, with power to sell the same and apply the proceeds thereof in satisfaction of the judgment. The motion was accompanied by an affidavit, setting forth the facts above stated, and the additional facts that defendant had refused to apply the seats in satisfaction of the judgment, and that each of said seats exceeded in value the sum of one thousand dollars. Upon the hearing of the motion, the defendant filed affidavits, in one of which the constitution and by-laws of the two boards were fully set forth. It appears from the constitution and by-laws of the San Francisco Stock and Exchange Board that the legal title and ownership of the property of the association is vested in certain officers, "in trust for the benefit and enjoyment of its members"; that "no member under any circumstances shall be deemed to have, or claim, or possess, any individual right, title, or interest in the property or assets of the association, except when the same shall be finally dissolved and its affairs wound up by its then remaining members"; that every application for membership is subjected to the scrutiny of a committee, whose report, if favorable, entitles the applicant to be balloted for, and whether favorable or unfavorable, the applicant may be rejected by twenty negative votes; that if a member of the association join any similar organization in this state he may be immediately expelled; that it is "distinctly understood and agreed between the board and each member thereof that the board reserves the right to reject any nominee."

The constitutions and by-laws of the two boards are, so far as the questions before us are concerned, similar in character; and so far as the rights, duties, and interests of the members are concerned, the laws of the two boards are essentially the same as those of other stock and produce exchanges in New York and other states of the Union.

After the hearing upon the motion, the court below made an order appointing C. K. Bonestell, Esq., a receiver of both seats, with power to sell the same and apply the proceeds thereof, after payment of the expenses, to the satisfaction of the judgment, and requiring the defendant to execute any assignment or other instrument necessary for the purpose of vesting his title to the seats in such person or persons as might become purchasers thereof from the receiver, and might be qualified to hold the same under the rules of the respective boards. No provision was made in the order as to the manner of sale,— whether it should be a public or private sale. Thereafter the receiver reported to the court that he had sold the seats to one H. L. E. Meyer, for the sum of two thousand two hundred dollars. This sale was confirmed by the court, the amount realized from the sale was credited on the judgment, and the appellant was directed to execute and deliver assignments of the two seats within five days thereafter, said assignments to be deposited pending the appeal with the clerk of the court. Appellant excepted to the order appointing the receiver, and directing him to sell the seats, and also excepted to the order directing the execution and delivery of the assignments, but no objection was made to the order confirming the sale.

As stated by appellant, two questions are presented here for consideration:—

1. Did the seats, or any interest therein, constitute property within the reach of the appellant's judgment creditors?

2. If they did, was the order appointing a receiver, and the order directing the appellant to execute assignments of all his right, title, and interest in and to the seats, a proper mode of reaching that property?

On the first question presented there is an apparent conflict of judicial opinion. In *Thompson* v. *Adams*, 93 Pa. St. 55, the court said: "The seat is not property in the eye of the law; it could not be seized in execution for

the debts of the members. It is the mere creation of the board, and of course was to be held and enjoyed with all the limitations and restrictions which the constitution of the board chose to put upon it." In *Pancoast* v. *Gowen,* 93 Pa. St. 71, the court said: "A seat in the board of brokers is not property subject to execution in any form. It is a mere personal privilege, perhaps more accurately a license, to buy and sell at the meetings of the board. It certainly could not be levied on and sold under a *fieri facias.* The sheriff's vendee would acquire no title which he could enforce." It may be said, before passing to the authorities cited on the other side of the question, that in *Thompson* v. *Adams,* "the plaintiff below was not a member, but had furnished the money by which Richards obtained a seat." He therefore contended that he was the equitable owner of the seat, and that the defendant had no right to apply the proceeds to debts due by Richards to other members, in pursuance of the terms of the constitution of the club. The question for the decision of the court there was, whether or not plaintiff was entitled to the proceeds of the seat, either in full or *pari passu* with the other creditors of said Richards, who at the time of his decease were members of the board, or whether the claims of such members were paramount to the plaintiff's until the former were satisfied. The court decided that the seat "was to be held and enjoyed with all the limitations and restrictions which the constitution of the board chose to put upon it." And in *Pancoast* v. *Gowen* it did not appear whether there were any claims against the seat by members of the board, but "the answers of the garnishees admitted that Houston, the defendant in the judgment, owned a seat in the stock exchange against which there were no claims by the members of that body at the time the attachment was issued, *but they alleged that claims had since been presented.*" In the case before us, it is not claimed that the defendant was, at the time of the proceedings in the court below, indebted to any of his associates in either board.

In *Hyde* v. *Woods*, 94 U. S. 523, the court decided that the proceeds of a sale of the seat in the hands of the treasurer of the board, after payment of the preferred claims of members of the board, could be reached by the assignee in bankruptcy of the person whose seat had been sold. While this was the only matter for decision before the court, Mr. Justice Miller, speaking for the court, said: "There can be no doubt that the incorporeal right which Fenn had to his seat when he became bankrupt was property, and the sum realized by the assignees from its sale proves that it was valuable property. Nor do we think there can be any reason to doubt that, if he had made no such assignment, it would have passed, subject to the rules of the stock board, to his assignee in bankruptcy. . . . . Though we have said it is property, it is encumbered with conditions when purchased, without which it could not be obtained. It never was free from the conditions of article 15, neither when Fenn bought nor at any time before or since. That rule entered into and became an incident of the property when it was created, and remains a part of it, into whose hands soever it may come." In *Clute* v. *Loveland*, 68 Cal. 254, this court said: "The rules expressly authorize each member to dispose of his seat, subject, however, to the condition that before the purchaser can participate in the proceedings of the board he must be elected a member thereof. The power to dispose of the seat includes the power to dispose of it absolutely or conditionally. If a member should sell his seat to one who should not be elected a member of the board, it cannot be doubted that such purchaser would take, subject to the conditions imposed by the rules of the association, the interests of the seller in the property of the association. . . . . Whether the disposition be absolute at the beginning or subsequently becomes so through judicial proceedings, the result is the same." It is true in that case there was an agreement between the parties, Clute and

Loveland, by which the latter mortgaged his seat to the former as security for the repayment of moneys due from the one to the other. But this particular feature of the case, if the seat is property, is not enough to distinguish it in principle from the one before us. The constitution and by-laws of the association seem to regard the seats as property. Article 13 of the constitution provides that a member in good standing "shall have the right to dispose of his privileges in the board, and to nominate his successor to fill the vacancy occasioned by his retirement; . . . . but the board reserves the right to reject any nominee. In the event of the death of a solvent member, the board will dispose of the vacant seat to the best advantage for the benefit of his widow and children, or those persons who shall be designated by him in his last will and testament," etc. Whenever a member has been deprived of his privileges, or surrenders his membership, it is provided that his seat may be sold, and the president of the board, as trustee, shall hold the proceeds "to discharge the obligations due by such person to members of the board, and any surplus remaining shall, after having satisfied all other claims against him, be delivered to the delinquent, or to any person authorized to receive the same."

In *Londheim* v. *White*, 67 How. Pr. 467, the court said: "It must be conceded, I think, in the light of all the decisions, that a seat or membership in the stock exchange is property, and should be applied in the same manner as other property of a debtor to the payment of his debts. It may be surrounded and clogged with conditions and restrictions, but still it is property available for the payment of debts, and can be made available for that purpose, subject to and by an observance of those restrictions and conditions. . . . . This question has been passed upon so frequently by the courts as to make it no longer doubtful or debatable." In *Grocers' Bank* v. *Murphy*, 60 How. Pr. 426, the court, referring to the

contention that such a seat is not tangible property, said: "If such a result may be attained, the efforts of an active imagination cannot circumscribe the associations human ingenuity will produce, to thus transmute veritable assets into intangible, and yet most substantial and valuable, shadows." Judge Choate, in the United States district court, southern district of New York, upon an application for an order requiring a bankrupt to make a transfer of his seat in the New York Stock Exchange to the assignee in bankruptcy, or to such person as the assignee may procure as a purchaser of the seat, said: "It [the seat] is a part of the bankrupt's business assets, or more generally of his property, which it was the primary design of the bankrupt law to distribute among his creditors, and the peculiarities which distinguish this from other property are, in view of the evident purpose and scope of the bankrupt law, mere technicalities, — cobwebs which the law is strong enough to break through." ( *United States* v. *Ancarola*, 9 Reporter, 303; see also *Powell* v. *Waldron*, 89 N. Y. 328; 42 Am. Rep. 301.)

We conclude, therefore, that the weight of authority and the better reasoning support the proposition that such a seat, or membership, is property, and should be applied as other property of a debtor to the payment of his debts. To hold that it cannot be thus applied would establish a rule giving to the members of such associations the power to invest fortunes under the name of licenses and privileges, and by their constitutions and regulations to establish a law of exemption for the same.

Upon the other question raised, we think there can be little doubt. In *Pacific Bank* v. *Robinson*, 57 Cal. 520, 40 Am. Rep. 120, it was held that proceedings supplementary to execution are intended to take the place of the creditors' bill; and in such a proceeding, it was proper to order the execution debtor to make an assignment to a receiver of his patent right to an invention. It was always the rule in a proceeding known as a creditor's

bill, as we understand it, to appoint a receiver after the execution had been returned *nulla bona.* (Note to *Ward* v. *Beebe,* 15 Abb. Pr. 373; *Stoors* v. *Kelsey,* 2 Paige, 418; *Hadden* v. *Spader,* 20 Johns. 554; *Londheim* v. *White, supra; United States* v. *Ancarola, supra.*)

Freeman, referring to such seats, says: "They have been spoken of by the courts as property; and it has been said that on bankruptcy they would pass to the assignee, subject to the rules of the stock board. If this be true, they must be subject to execution in some mode, perhaps by creditor's bill, or by proceedings supplemental to execution, in which a receiver could be appointed and a transfer to him compelled." (1 Freeman on Execution, 2d ed., sec. 110; 2 Freeman on Execution, 2d ed., sec. 419; Code Civ. Proc., sec. 564, subd. 4.) No claim was made in the court below that a better price could have been realized for the seats than was obtained through the sale by the receiver, and as stated before, no objection was made to the order of the court confirming the sale of the seats for two thousand two hundred dollars, nor has any appeal been taken therefrom.

The orders are affirmed.

McFARLAND, J., and SHARPSTEIN, J., concurred.

Hearing in Bank denied.