WILLIAM LOWENBERG, RESPONDENT, v. JACOB GREENEBAUM ET AL., APPELLANTS.

EXECUTION—BROKER'S SEAT IN STOCK AND EXCHANGE BOARD NOT SUBJECT TO LEVY AND SALE. — A broker's seat in the San Francisco Stock and Exchange Board, a voluntary association, membership in which depends upon the election of the associates, ten negative votes excluding from participation therein, and which cannot be voluntarily transferred, except to a person whom the association shall choose to elect as a member, is not subject to levy and sale under execution, and an attempted sale thereof under execution to one whom the association refuses to elect, passes no title as against the broker who retains his seat therein.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Edward R. Taylor, John R. Jarboe,* and *W. S. Goodfellow,* for Appellants.

A "seat" in a stock exchange is nothing more than an incorporeal right which is not attachable and is not subject to sale under execution. (Freeman on Executions, sec. 110; *Pancoast* v. *Gowen,* 93 Pa. St. 66; *Barclay* v. *Smith,* 107 Ill. 349; 47 Am. Rep. 437. See *Stephens* v. *Cady,* 14 How. 531.) The only way to subject it to the satisfaction of the judgment is by proceedings supplementary to execution requiring him to deliver it to a receiver. (*Pacific Bank* v. *Robinson,* 57 Cal. 521; 40 Am. Rep. 120; *Habenicht* v. *Lissak,* 78 Cal. 351; 12 Am. St. Rep. 63.) Mere equities are not subject to attachment or execution. (*Hassie* v. *G. I. W. U. Congregation,* 35 Cal. 378.)

*Wal. J. Tuska,* for Respondent.

The "seat" is property, and should be applied in the same manner as other property of a debtor to the payment of his debts. (*Habenicht* v. *Lissak,* 78 Cal. 351; 12 Am. St. Rep. 63; *Clute* v. *Loveland,* 68 Cal. 254; *Londheim* v. *White,* 67 How. Pr. 467; *Grocer's Bank* v. *Murphy,* 60 How. Pr. 426; *United States* v. *Ancarola,* 9 Rep. 303; *Hyde* v. *Wood,* 94 U. S. 523; *Durkee* v. *Stringham,* 8 Wis. 1; Code Civ. Proc., secs. 541, 542, 688, 691, 699. See also *Roome* v. *Swan,* 2 N. Y. Supp. 614;

*Powell* v. *Waldron*, 89 N. Y. 331; 42 Am. Rep. 301; *Fish* v. *Fiske*, 154 Mass. 302.) *Any* interest may be levied on under execution in this state. (*Kennedy* v. *Nunan*, 52 Cal. 326; *Le Roy* v. *Dunkerly*, 54 Cal. 460; *Fish* v. *Fowlie*, 58 Cal. 373.) The property which one may himself sell may be sold under execution against him, except a homestead, or property declared exempt. (*Fish* v. *Fowlie*, 58 Cal. 373; *Farmers' Nat. Gold Bank* v. *Wilson*, 58 Cal. 600.)

McFARLAND, J.—Judgment went in the court below for plaintiff; and defendants appeal from the judgment and from an order denying a new trial.

In January, 1888, Simon Kullman *et al.* recovered a money judgment for several thousand dollars against the defendant in the present action, Jacob Greenebaum; and on September 23, 1889, an ordinary writ of execution was issued on said judgment. The sheriff undertook, under said writ, to levy upon and sell as personal property the "seat" of said Greenebaum in an association known as the San Francisco Stock and Exchange Board. He endeavored to accomplish this in the following manner: He delivered to the president and secretary of said association a copy of the said execution "together with a notice that all moneys, credits and effects of the defendant, Jacob Greenebaum, in the possession or under the control of the said San Francisco Stock and Exchange Board, together with the seat, interests and shares of the defendant, Jacob Greenebaum, in and to the San Francisco Stock and Exchange Board, were levied upon by virtue of said writ." He then advertised the said seat, interest, etc., for sale for a period of six days; and on October 16, 1889, he sold the same to William Lowenberg, the plaintiff herein—he being the highest bidder. On the same day the sheriff gave to plaintiff a certificate of sale which, after reciting the above facts, certifies that the sheriff had sold to plaintiff "all the right, title and interest of Jacob Greenebaum, one of the defendants, in and to the San Francisco Stock and Exchange Board, and the seat, interest and shares of the said Jacob Greenebaum in the San Francisco Stock and Exchange Board."

On said October 16th the plaintiff herein served a notice

directed to said stock board upon its president, which, after reciting said sale, demanded " to be admitted to the enjoyment and participation of all the rights, privileges and interests heretofore enjoyed by the said Jacob Greenebaum in your board and in the property thereof," and that an accounting be had, etc. The board paid no attention to the demand, and said Greenebaum has ever since continued to occupy his seat, with all its rights and privileges, in said board. Afterwards, on March 12, 1890, plaintiff brought this present action against said Greenebaum, making the said stock board and also a corporation called the Company of Associated Stock Brokers parties defendant. The purpose of the action is to have plaintiff's title to said seat and rights appurtenant thereto quieted, a receiver appointed, an injunction issued, etc. Plaintiff rests his title wholly upon said asserted levy and sale by said sheriff under said writ of execution as aforesaid; but we do not think that by said sheriff's sale the said seat of said Greenebaum in said stock board, or any rights dependent thereon, were conveyed to plaintiff.

The said San Francisco Stock and Exchange Board is a voluntary association without capital stock or shares. The findings, and an agreed statement of facts, set forth very fully its constitution and by-laws, and show very clearly its character and purposes. There are stock boards in other American cities very similar to the one here in question, and they all seem to have been framed upon the same model. It is sufficient to state here a few of the features of the San Francisco Stock and Exchange Board, as follows: It is a voluntary association consisting of not more than one hundred persons; it does not itself do any stock business, but its purpose is to afford facilities for its members doing such business, each individually for himself; each member has a "seat" in the board, and his seat represents and is the sole basis of his rights in said board, and entitles him to a place in the room provided by the association for the use of its members, to participate in its meetings, and to therein transact his individual business as a stock broker; occasionally the board, as an incident to its purpose of providing a place for the meeting of its members, has a surplus of money over its expenses, and sometimes divides said surplus among its members, and the owner of a seat is entitled to his proportion of such surplus

when a dividend is declared; no person can become a member of said association, or be entitled to a seat therein, except he be elected by the members of the association according to its constitution and by-laws, under which "ten negative votes shall exclude"; its constitution declares that no member shall have any individual right or title to any of the property or assets of the association until after its dissolution and the final winding up of its affairs by "its then remaining members"; if a member in good standing desires to retire, he cannot dispose of his seat except to a person whom the association shall elect to become a member; and at no time since the organization of the association has any member been authorized to sell his seat "upon any terms whatever except to such person as shall have been personally elected to membership in said association by the remaining members thereof."

There are many other features of the association not necessary to be here especially mentioned; the foregoing gives a clear notion of its general character. The plaintiff was never elected a member, and the association has always refused to recognize him in any way. The defendant Greenebaum remains in possession of the said seat, and is recognized as the lawful occupant thereof by the association.

An attempted voluntary sale of the seat by Greenebaum to Lowenberg, the latter not having been elected a member of the board, and the association not having consented to the sale, would not have transferred the title to the seat, or to any of its incidents; and it is difficult to see how a simple sale under execution transferred something which the judgment debtor himself could not have transferred. (Freeman on Executions, sec. 112, and cases there cited.) Moreover, a creditor cannot have property of a debtor applied to the satisfaction of a debt except in the way provided by law; and there is no way provided by law by which such an intangible thing as a seat in the stock board above described — that is, a personal privilege of being and remaining a member of a voluntary association with the assent of the associates — can be levied upon and sold under execution. Section 688 of the Code of Civil Procedure provides that property may be levied upon under a writ of execution "in like manner as upon writs of attachment"; and section

542 provides what property may be taken on a writ of attachment, and in what manner various kinds of property may be so taken. But there is not in any subdivision of section 542 a method provided for attaching such a thing as this seat in a stock board. In *Pacific Bank* v. *Robinson*, 57 Cal. 523; 40 Am. Rep. 120, this court expressly held that a patent right is not tangible property which is the subject of seizure and sale on execution; and a seat in the stock board is certainly not more tangible than a patent right, for the latter can at least be sold and transferred by its owner at his own will, while the former cannot. The only case directly in point cited by counsel on either side is that of *Pancoast* v. *Gowen*, 93 Pa. St. 71. There a seat in a stock board similar to the one in question here had been levied upon under execution, and the court say: "A seat in a board of brokers is not property subject to execution in any form. It is a mere personal privilege, perhaps more accurately a license to buy and sell at the meetings of the board. It certainly could not be levied on and sold under a *fi-fa*. The sheriff's vendee would acquire no title which he could enforce." (See also Freeman on Executions, sec. 110.)

Whether the respondent by a creditor's bill in chancery, or by proceedings supplementary to execution under our code, could reach appellant's right to a seat in the board, is a question not now before us. We merely hold that respondent did not acquire title to that seat, or to its incidents or appurtenances by virtue of the execution sale hereinbefore mentioned. And under these views it would be useless to inquire into the relations between the San Francisco Stock and Exchange Board and the other appellant, the Company of Associated Stock Brokers. As the respondent has no title to said seat he has no interest in those relations.

The judgment and order appealed from are reversed.

FITZGERALD, J., and DE HAVEN, J., concurred.