### AUSTEN v. BRIGHAM.

(Supreme Court, Special Term, New York County. May 4, 1897.)

TAXATION—NON-RESIDENT—INVESTMENT IN STATE—SEAT IN STOCK EXCHANGE.
    Under Laws 1855, c. 37, declaring that nonresidents doing business in the state shall be assessed and taxed on sums invested in such business, a nonresident broker owning a seat or privilege of transacting business on the New York Stock Exchange (such privilege being transferable, with the consent of two-thirds of the admission committee, and the proceeds of the sale of such privilege payable to the member's representatives on his death) was properly assessed for the sum paid for the privilege.

In the matter of the petition of David E. Austen, as receiver of taxes, against William S. Brigham. Motion for an order for the payment of a tax assessed against said Brigham. Motion granted.

BEEKMAN, J. The respondent has been taxed as a nonresident with respect to money invested by him in his business in the city of New York, which is that of a stockbroker. He is a member of the New York Stock Exchange, and it is conceded that the subject-matter of the agreement upon which the tax has been laid is his membership, or, as it is popularly described, his "seat," in the exchange. That such membership is property is now too well settled to admit of question. Powell v. Waldron, 89 N. Y. 330; Platt v. Jones, 96 N. Y. 24. In the case of Powell v. Waldron, supra, Judge Finch, in considering the characteristics of membership in the cotton exchange of this city, says (page 331):

"We think the right of a judgment debtor to a seat in the cotton exchange was property. That it had value was proved and is conceded, and that it could be transferred to a certain class of purchasers, under prescribed rules

and conditions, is also established. * * * Although of a character somewhat peculiar, its use restricted, its range of purchasers narrow, and its ownership clogged with conditions, it was nevertheless a valuable right, capable of transfer, and correctly decided to be property."

In Platt v. Jones, supra, which concerned a seat in the stock exchange, this case, as well as a number of others, was cited in support of the same conclusion; the court stating that "the question as to the character of the property of such a seat is so fully discussed in the authorities cited that nothing more is necessary to be added." Page 29. Article 13 of the constitution of the New York Stock Exchange confers upon any member the right to transfer his membership on the approval of two-thirds of the committee on admission, to whom the name of the proposed transferee must be submitted. When a member dies, his membership may also be disposed of by the committee whose duty it is made to pay over the proceeds to the legal representatives of the deceased, after discharging thereout the claims, if any, of other members of the exchange against him. Where the member has been deprived of his membership, his seat may also be disposed of by the committee for his benefit, subject to the payment out of the proceeds of any claim against him in favor of his fellow members. It is a matter of common knowledge that these seats are of large pecuniary value, and for many years have been freely sold and transferred for large sums of money, with the sanction of the exchange, which is never unreasonably withheld. The decisions holding these rights which may be thus bought and sold to be property certainly seem to be supported by sound reason. The plaintiff, however, contends that the value of his seat does not represent money invested in his business. In this I think that he is mistaken. The statute under which the tax in question has been imposed provides that nonresidents doing business in this state "shall be assessed and taxed on all sums invested in any manner in said business the same as if they were residents of this state." Laws 1855, c. 37. The papers show that the respondent was actively engaged in business in this city as a stockbroker prior to the assessment complained of. He purchased his seat in the stock exchange in 1890, paying therefor the sum of $20,500, in addition to the regular initiation fee, $1,000, required by the rules. It also appears that during the years 1894 and 1895 the average price of such a seat was about $18,000. The right to trade upon the floor of the stock exchange is highly important, if not absolutely essential to the conduct of the business of buying and selling stocks and bonds, as the market is controlled by the exchange, and access to it is confined to its members. How highly the privilege is valued from a business point of view is shown by the large sums which brokers are willing to pay for it. It is part of the plant or machinery, so to speak, through which the business is done, and the expenditure of money in the purchase of such a seat is as much the investment of money in the business of the broker as is the purchase by a manufacturer of the tools and machinery with which he creates the article which it is his business to produce. The money is not lost, but is represented by the property which has been acquired, and which may be reconverted into

money whenever the owner may desire to do so. That the legislature intended to use the word "invested" in its broadest sense is shown by the qualifying words "in any manner," which immediately follow it. British Commercial Life Ins. Co. v. Commissioner of Taxes and Assessments of New York, 31 N. Y. 32. As the respondent is engaged in business in the state, and has invested money in such business in the manner above stated, within the meaning of the statute, the assessment was properly made by the tax commissioners, and the order for the payment of tax must issue.

Motion granted, with costs.