THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM LEMMON, Appellant, *v.* THOMAS L. FEITNER and Others, as Commissioners of Taxes and Assessments of the City of New York, Respondents.

*Tax — the value of a seat in the New York Stock Exchange of a non-resident member is not taxable.*

The money value of the privilege enjoyed by a non-resident of the State of New York as a member of the Stock Exchange of the city of New York is not capital invested in business in the State of New York, within the meaning of section 7 of the Tax Law, relating to the taxation of the capital of non-residents invested in business in the State of New York.

*Semble,* that such privilege is included within the definition of the term "personal property" contained in section 4 of the Statutory Construction Law, although its ownership and the power of disposition thereof are hedged in by restrictions, but is not included within the definition of that term contained in subdivision 4 of section 2 of the Tax Law.

O'BRIEN, J., dissented.

APPEAL by the relator, William Lemmon, from a final order of
the Supreme Court, made at the New York Special Term and
entered in the office of the clerk of the county of New York on the
26th day of March, 1900, dismissing a writ of certiorari issued to
review an assessment against the relator for personal property.

*Lewis Cass Ledyard,* for the appellant.

*James M. Ward,* for the respondents.

RUMSEY, J. :

The relator is a resident of the State of New Jersey. He is a
member of the Stock Exchange in this city, and, as such member, he
was assessed by the respondents for the sum of $20,000 as the value
of his seat in the exchange upon the claim that it was capital
invested in his business under section 7 of the Tax Law. (Chap.
24, Gen. Laws ; Hydecker's Gen. Laws, p. 1856.) He sued out a
writ of certiorari to review this assessment.

It appears from the papers that he is a non-resident of the State ;
that he has no personal property within the State unless his seat in
the exchange is such ; that his sole business is buying and selling
stocks upon commission on the floor of the exchange ; that he
invests no money in that business, as he buys only such stocks as he
is ordered to buy, and pays no money for them and puts up no
margin ; that he paid $4,000 for his seat in the exchange in 1872 ;
that the membership, which is called his seat in the exchange, gives
him the privilege of going upon the floor of the exchange and doing
business there ; that his privilege is of very considerable value ; that
so far as the relator himself is concerned, it is purely a personal
privilege, but that it is transferable to any person who is willing to
pay the value of it ; that such transfer, however, does not necessarily
give to the transferee the same privilege which the transferrer has,
and he cannot become a member of the Stock Exchange unless he is
elected by the governing committee after such examination as to his
character, manner of doing business and health, as they see fit to make,
and whether they shall elect him is entirely in their discretion and
pleasure ; that all sales of these privileges are subject to the election
of the purchaser by the governing committee, and are to be void if

the purchaser is not elected; that the rules of the exchange provide that members may be suspended for certain offenses and under certain circumstances, and they may be expelled, and if expelled and not reinstated, their seats are forfeited and the value of it belongs to the exchange, except that in certain circumstances where a member is expelled his seat is sold and the amount realized is given to him; that the Stock Exchange is an unincorporated voluntary association, and it does not appear from the papers whether as such it owns any property.

On these facts the court below determined that the seat was property and was assessable under section 7 of the Tax Law, as the capital invested in his business.

The appellant insists in the first place that his membership, or as it is called his "seat," in the Stock Exchange is not property. The nature of it is fully set forth above. As far as the relator is concerned, it is a mere personal privilege which entitles him to go upon the floor of the exchange and there buy stocks from other persons who are also entitled to be there and who are engaged in that business. Because he is there he can deal more conveniently than if he were obliged to go upon the street or go to the office of other dealers, but he personally receives no other benefit than that from his membership. As is said above, however, he was obliged to pay a considerable sum of money to obtain this privilege, and if he chooses to sell it he would be able to do so for a much greater price than he paid for it; but the person who bought it would obtain no rights of membership unless he was elected by the governing committee of the exchange, who would be at liberty to refuse to do so if they saw fit. But this privilege is, nevertheless, property within that definition of the term "personal property" which is contained in section 4 of the Statutory Construction Law, although its ownership and power of disposition is hedged in by restrictions. (Stat. Const. Law [Gen. Laws, chap. 1], § 4; *Belton* v. *Hatch*, 109 N. Y. 593; *Lowenberg* v. *Greenebaum*, 99 Cal. 166; *Pancoast* v. *Gowen*, 93 Penn. St. 66.)

But the fact that in a certain sense it may be property does not necessarily make it taxable. The definition of the Statutory Construction Law as to what constitutes personal property does not apply with repsect to that which may be assessed for taxation. The

power of the assessors to put property upon the assessment roll is derived from the Tax Law, and their jurisdiction, especially over non-residents, is no greater than that which the Tax Law gives them. (*McLean* v. *Jephson,* 123 N. Y. 142.) That law prescribes that all real property within the State and all personal property within the State shall be taxable unless exempt from taxation by law (Tax Law [Chap. 24, Gen. Laws], § 3), but the term "personal property" as used in that section is defined by subdivision 4 of section 2 of the Tax Law, and such property only is taxable in this State as is included within that definition. The personal privilege of a member of the Stock Exchange is neither expressly nor by fair implication included in any of the terms of that definition, and there can be no doubt that if the relator were a resident of this State his right to do business on the Stock Exchange would not be subject to assessment.

But it is said by the respondents that although a resident would not be taxable for this species of property, yet the relator being a non-resident is taxable because the money which he invested in the Stock Exchange was actually capital invested in his business. But in the first place it is to be said that he is not assessed for the money which he invested for his seat in the Stock Exchange. That was only $4,000, as appears by these papers and is not disputed, but he is assessed in the sum of $20,000, not because he has invested $4,000 in the business in which he is engaged, but because the right to do that business is worth the sum of $20,000.

The right to tax this relator for any sort of property is given by section 7 of the Tax Law, and unless this assessment can be sustained under the provisions of that section it clearly cannot be sustained at all. That section provides that non-residents of the State doing business in the State either as principals or partners, shall be taxed on the capital invested in such business as personal property at the place where such business is carried on, to the same extent as if they were residents of the State.

The question is whether this sum of $20,000 which is assessed against the relator can be said to be capital invested in his business, because in 1872 he bought the privilege of doing business in the Stock Exchange for the sum of $4,000, which was all he paid for it. Before proceeding to a consideration of the words of the statute, it

is well to look at the title of the section. That title was a part of the law as passed by the Legislature, and, therefore, it must be assumed that it represents the subject about which the section treats, and can be referred to as throwing some light upon the meaning of the section. The section is entitled, " When property of non-residents is taxable,", and it is fairly to be assumed that the word " property " when it is used in the Tax Law in that place has the same meaning as the same word as used elsewhere in the statute, and that the property which is taxable under the provisions of that section is that which has been referred to in the definition of the law as constituting property.

A non-resident is assessed upon " capital " invested in his business. The word " capital " has a well-defined meaning. It is said to be " the sum which a merchant, trader or other person or association adventures in any business requiring the expenditure of money, with a view to profit." (5 Am. & Eng. Ency. of Law [2d ed.], 134.) Bouvier defines it as " The sum of money which a merchant, banker or trader adventures in any undertaking, or which he contributes to the common stock of a partnership." (Bouvier Law Dict. tit. " Capital.") It has been defined by the Supreme Court of the United States as " property taken from other investments or uses and set apart for and invested in the special business, and in the increase, proceeds or earnings of which property, beyond expenditures incurred in its use, consist the profits made in the business." (*Bailey* v. *Clark*, 21 Wall. 284.) In the case of *McLean* v. *Jephson* (123 N. Y. 142) it was said that to authorize the assessment of property of a non-resident under the Tax Law, as it then read, it was essential that the person assessed should in fact have money invested in a business carried on by him in this State. At that time a non-resident was taxable upon " all sums " invested in his business, instead of upon " capital " invested in his business, as at present. But the fact that a change is made in the verbiage upon a revision of a statute does not work any change in the construction unless it is absolutely required by the nature of the change. The capital upon which a non-resident is to be taxed must be capital invested in his business.

But to invest a sum is to lay it out in some permanent form so as to produce an income. (Bouvier Law Dict. tit. " Invest.") When we speak of the capital invested in a business we mean the

money which is put into that business with the intention that it shall be used in the transaction of the business. Money cannot be said to be invested in a business when it is used only to buy the right to engage in a business which does not require the use of money, or the privilege to transact business which calls simply for the exercise of skill, experience or learning. If one buys the good will of a partnership he certainly cannot be assessed for the value of that good will. So if a man buys from a physician or a lawyer a portion of a profitable business, no one would ever think of assessing him for the value of the good will which he bought. But if he were assessed in respect either of his interest in a business firm or his interest which he bought from the physician or the lawyer, he would be assessed for the value of the assets of that firm which were used in the transaction of the business which he bought. So, a non-resident who is to be taxed upon his capital, is to be taxed " to the same extent " as if he were a resident. That means necessarily that he is to be taxed upon the same sort of property, and that property is to be valued at the same rate as if it belonged to a resident.

The kind of property which is within the jurisdiction of the assessor is that described in section 2 of the statute. If the non-resident has property of that kind which he uses in the transaction of his business in this State, no matter whether it is real estate or personal property, he is to be assessed upon it as personal property. But he is to be assessed to the same extent as a resident. That is to say, in getting at the amount of his assessment the same considerations are to apply as to what constitutes property in his hands as apply to a resident, and when it is ascertained what constitutes his property he is to be assessed at the same valuation and not otherwise.

In the case of *Austen* v. *Brigham*, reported in the N. Y. Law Journal of May 5, 1897, the learned justice did not consider, as it seems to us, the difference between the general definition of property in the Statutory Construction Act and in the cases cited by him, and the limited definition contained in the Tax Law, but he put his decision solely upon the ground that the membership in the Stock Exchange being property within the broad general definition, the money used to buy it was a sum invested in business. We are unable to agree with his reasoning and, therefore, cannot adopt the conclusion which he reached.

These considerations require us to conclude that the personal privilege of this relator is not capital invested in his business within the meaning of section 7 of the Tax Law, and for that reason he was not taxable upon it, and, therefore, the order dismissing the writ should be reversed and the assessment vacated, with costs.

VAN BRUNT, P. J., PATTERSON and McLAUGHLIN, JJ., concurred; O'BRIEN, J., dissented.

Order reversed and assessment vacated, with costs.