[No. 9079.  Department One. — December 23, 1885.]

F. W. CLUTE, APPELLANT, v. L. F. LOVELAND, RESPONDENT.

SAN FRANCISCO STOCK AND EXCHANGE BOARD — SEAT OF MEMBER — FORECLOSURE OF LIEN ON — SALE OF SEAT. — The San Francisco Stock and Exchange Board is a voluntary association formed for the purpose of dealing in stocks, and buying and selling the same on commission. The Company of Associated Stock-brokers is a corporation composed exclusively of the members of the association, and was formed for the purpose of receiving donations with which to erect a building for the use of its members. This it has done. The members of the association and of the corporation are entitled to an equal share of its property, and the only qualification for membership in the corporation is that each member shall be a member in good standing of the association, and shall sign the constitution and by-laws of the corporation. The right and title of each member to the property of the association, and the privilege of participating in the meetings of the board, is represented by what is called a "seat in the San Francisco Stock and Exchange Board." By the rules of the association, each member has the right to voluntarily dispose of his seat, but the purchaser, before he can participate in the proceedings of the board, must be elected a member thereof. *Held*, that the property, the legal title to which stands in the name of the Company of Associated Stock-brokers, is in equity the property of the members of the San Francisco Stock and Exchange Board, and that such a member has power to pledge or mortgage his seat, and that the lien thereby created may be foreclosed, and the seat sold subject to the conditions imposed by the rules of the association.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The action was brought for an accounting between partners, and for the foreclosure of an alleged lien on the seat of the defendant in the San Francisco Stock and Exchange Board. The further facts are stated in the opinion of the court.

*A. B. Hunt,* for Appellant.

*Estee & Wilson,* for Respondent.

Ross, J.—The findings show that during the times mentioned in the record the San Francisco Stock and Exchange Board was, and yet is, a voluntary association,

consisting of one hundred members, formed for the pur-
pose of dealing in stocks, and buying and selling the
same on commission in the city and county of San Fran-
cisco. That the Company of Associated Stock-brokers
was, and yet is, a corporation organized and existing
under the laws of the state, with its principal place of
business in the said city. That the said corporation was
formed by and is composed of the members of said vol-
unteer association solely, of both of which institutions
the defendant in this action was at all times, and yet is,
a member. That the members of the association and of
the corporation are entitled to an equal share or propor-
tion of its property, effects, and assets; that the only
qualification for membership in the corporation is that
such member shall be a member in good standing of
the volunteer association, and shall sign the constitution
and by-laws of the corporation; that the corporation was
formed for the purpose of receiving donations with
which to purchase land in the city of San Francisco,
upon which to erect a building for the use of its mem-
bers as stock-brokers, and has no shares or capital stock;
that the lot of land described in the complaint was pur-
chased, and the building thereon erected in 1875, with
funds belonging to the aforesaid volunteer association,
at a cost of more than five hundred thousand dollars, in
which building the board has since held its sessions;
that each member's right and title to the property, goods,
effects, and assets of the association, and the privilege
of participating in the meeting of the board, is repre-
sented by what is called and known as a "seat in the
San Francisco Stock and Exchange Board." That by
the rules of the board each member has the right to vol-
untarily dispose of his seat in the same, but the purchaser,
before he can participate in the proceedings of the board,
must be elected a member thereof. That by the said
rules the seat and privilege of every member is deemed
and taken to be from the time of his admission, and so

long as he continues a member, a continuing security to all members of the board with whom he may deal for the performance of his contracts and the fulfillment of his engagements. That the association is possessed of personal property, a portion of which is money. That the value of a seat in the board at the time of the trial of this action was at least six thousand dollars. That by a provision of the constitution of the board, any member failing to meet his engagements therein shall be suspended until he has settled with his creditors. That the defendant to this action, in January, 1877, was unable to meet his engagements with the members of the board, for which reason his privileges as a member thereof were suspended. That thereafter the plaintiff to this action paid to the members of the board the amount of the defendant's indebtedness to them, and defendant was thereupon restored to his privileges as a member of the board. And it is at this point that the contract between the plaintiff and defendant, which forms the basis of this action, comes in. It was a contract of partnership between the parties, by which they associated themselves together to buy and sell stock on commission, the defendant herein contributing his seat in the board, which for the purposes of the partnership was valued at eighteen thousand dollars, and which by the terms of the agreement was to go back to him at the same valuation at the expiration of the partnership, the term of which was fixed at one year. The contract then proceeds: "Said Clute [the plaintiff herein] has advanced to said Loveland [defendant], for his private purposes and account, the sum of nine thousand dollars, gold coin, and until the same is repaid to him by said Loveland his said advances shall stand in lieu of his part of the capital to be contributed, and he shall have a lien for the same on the seat of said Loveland in said stock board and on certain life policies transferred to said Clute by said Loveland, but all moneys paid by said

Loveland to said Clute shall be applied on his indebtedness, and shall reduce said Clute's lien as aforesaid. Said Clute shall contribute, as capital, sums of money from time to time to said business, equal to the amounts paid him by said Loveland up to the amount of nine thousand dollars, so that the capital contributed by both parties shall be equal." The agreement contained other provisions not important to mention.

The complaint sets out substantially the facts above detailed, and charges that the plaintiff, on or before August 22, 1877, paid and advanced for the private uses and purposes of defendant the sum of nine thousand dollars in gold coin, for the repayment of which defendant mortgaged, pledged, and hypothecated his said seat in said board, and also was to transfer as future security for said advances certain life policies by him held; that defendant has never paid plaintiff said advances of nine thousand dollars, nor any part thereof, nor has he ever transferred to plaintiff the policies of insurance; that the firm formed by plaintiff and defendant during its existence did a large business and accumulated large profits, almost all of which defendant appropriated to his own use; that the firm is largely in debt and has debts due it, and is owing plaintiff the sum of $33,090.51, "for and on account of moneys and profits belonging to plaintiff and interest upon the same by him left in said firm, and also for and on account of moneys by said plaintiff loaned, paid out, and advanced to and for the use and benefit of said firm"; that defendant has no property and effects except said seat in said board and his interest in said association and in said firm accounts; that plaintiff has often demanded of defendant a settlement of the firm business, and that defendant refused to plaintiff the said sum of nine thousand dollars, all of which demands have been refused. The prayer is for an accounting and settlement of the firm accounts; and that plaintiff's alleged lien on defendant's seat in the

San Francisco Stock and Exchange Board be foreclosed, and said seat sold to satisfy the nine thousand dollars indebtedness from defendant to plaintiff, and for such other and further relief as should be equitable.

In addition to the findings already stated, the court below found that defendant has never repaid any part of the nine thousand dollars paid by plaintiff on defendant's indebtedness to the members of the Stock and Exchange Board, and that at the commencement of this action the same was due and unpaid. The court further found that defendant is indebted to plaintiff in the further sum of $14,580.99, for and on account of moneys drawn by defendant from the partnership business. The court further found as a fact that the contract between the parties "in form creates a good and sufficient lien or mortgage on the seat of defendant in the San Francisco Stock and Exchange Board, to secure the repayment of said sum of nine thousand dollars paid by said Clute on the indebtedness of said Loveland, as aforesaid."

From the facts found the court concluded that plaintiff was entitled to a personal judgment against defendant for the aggregate amount of the sums found due and costs of suit, but that plaintiff did not acquire any lien on the seat of the defendant in the San Francisco Stock and Exchange Board, and judgment was entered accordingly. In so far as the court refused to award the plaintiff the lien claimed, and to enforce the same, the plaintiff claims there was error, and hence appeals from the judgment.

The action of the court below was based on the nature of the property on which the parties sought to create a lien, the court being of opinion that it was of such a character as not to admit of the creation of a lien thereon as between the parties to this suit. In this we think there was error. The property, the legal title to which stands in the corporation called the Company of Associated Stock-brokers, is in equity the property of the members of the San Francisco Stock and Exchange

Board. This is plain from the facts found and the settled law as applicable thereto. (*Charter* v. *San Francisco S. R. Co.*, 19 Cal. 246; *Shorb* v. *Beaudry*, 56 Cal. 450; *Cornell* v. *Corbin*, 64 Cal. 200; *Durkee* v. *Stringham*, 8 Wis. 124.) Now, by the rules and regulations of the association, each member is entitled to an equal share of all the property, goods, effects, and assets of the association, and his right and title thereto is represented by what is called a "seat in the San Francisco Stock and Exchange Board." The rules expressly authorize each member to dispose of his seat, subject, however, to the condition that before the purchaser can participate in the proceedings of the board he must be elected a member thereof. The power to "dispose" of the seat includes the power to dispose of it absolutely or conditionally. If a member should sell his seat to one who should not be elected a member of the board, it cannot be doubted that such purchaser would take, subject to the conditions imposed by the rules of the association, the interest of the seller in the property of the association. And if he may sell this, why not create a lien upon it, subject to the same conditions? As has been seen, the power given is to "dispose" of the seat. Whether the disposition be absolute at the beginning, or subsequently becomes so through judicial proceedings, the result is the same.

The purchaser takes the interest of him who disposes, subject to the conditions imposed by the rules of the association. But we can see no reason why he may not take this. In *Durkee* v. *Stringham*, 8 Wis. 124, above cited, it appeared that a number of persons associated themselves together and formed what was called in the written articles of association the Neshoto Lumbering Company. The declared object of the company was to raise moneys to be employed for the benefit of the members of the association in the purchase and sale of lands situated on the borders and in the vicinity of Twin Rivers, in Wisconsin, to build mills, etc. The capital

stock, consisting almost exclusively of real estate, was divided into four hundred shares, for which the ordinary certificates were issued, declaring that the holder was proprietor of —— shares in the capital stock and beneficial interests of the company, and had paid the sum of —— dollars on each share, and that the same was subject to all the provisions, covenants, and charges contained in the articles of association. These certificates of stock were made transferable by assignment, and it was provided in the articles of the association that the capital of the company, notwithstanding the conversion of any part of it into land, should be deemed and treated as personal property. The title of the real estate and of the personal property was vested in a trustee, in trust for the use of the company, who was the authorized agent to sell, bargain, and convey the personal property, to lease the lands, make conveyances, and in his name to take all conveyances as trustee for the company. " Each certificate," said the court, " represented an equitable title or interest in the property of the association. It is obvious that a stockholder who might own one hundred shares would, as between him and the other stockholders, be equitably entitled to one fifth part of the property. . . . . Now, by every principle of law it would seem that those certificates of stock, which for convenience were made transferable by assignment, represented a proportionable interest in the property of the company, an interest which a court of equity would protect, and could be sold, pledged, or mortgaged by the owner like any other kind or species of property. The mortgagee of such certificates would likewise have such an equitable lien or interest in the company property as a court would recognize and protect. This proposition, to our minds, is too plain for argument, and we would not have supposed that a doubt could be entertained upon the point had not the Circuit Court held otherwise, as we understand their decision." There, as

here, the association was unincorporated, and the title to the property was held by a trustee,—in that case by a member of the association; in this, by a corporation composed of all the members of the association and formed for that very purpose. In that case the interest of each member of the association was represented by a certificate of stock; in this case, by a "seat in the San Francisco Stock and Exchange Board." If in that case such certificates could be sold, pledged, or mortgaged by the owner, like any other kind or species of property, and a mortgagee thereof would acquire such an equitable lien or interest in the company property as a court of equity would recognize and protect, no reason is perceived why a pledge or mortgage of the "seat" in this case would not confer a like equitable lien, which will be recognized and protected by a court of equity, subject, of course, always to the rules of the association, the conditions of which, as was held by the Supreme Court of the United States in *Hyde* v. *Woods*, 4 U. S. 526, follow the property into whose hands soever it goes. Our conclusion is that the agreement between the parties gave to the plaintiff an equitable lien on the " seat of the defendant in the San Francisco Stock and Exchange Board," subject to the rules and regulations of the association, as security for the repayment of the sum of nine thousand dollars advanced by plaintiff in discharge of the indebtedness of defendant to the members of the association, and that the court below erred in refusing to enforce the same by directing a sale of the seat, subject to the rules and regulations of the association, to satisfy the amount so advanced.

Cause remanded with directions to modify the judgment to accord with these views.

McKEE, J., and McKINSTRY, J., concurred.