[S. F. No. 3657. In Bank.—December 4, 1907.]

## ALEXANDER R. BALDWIN, Respondent, v. MILLER & LUX et al., Respondents; MELISSA A. POTTER, Appellant.

CORPORATION—TRUSTEE TO WIND UP BUSINESS—DIVISION OF CAPITAL STOCK.—After the dissolution of a partnership, by the death of one of its members, a large number of persons, who then became owners of the partnership property as tenants in common, and who were desirous of liquidating the partnership business and converting its property into money and dividing the proceeds amongst themselves, entered into a contract whereby they agreed to form a corporation to take over the partnership assets, to convert the same into money, and to divide the proceeds among the co-owners, who were to become stockholders of the corporation in proportion to their respective holdings. In pursuance of such contract a corporation was formed for the purpose stated in the contract, to which the partnership assets were conveyed, and stock therein was issued to the co-owners as fully paid up in proportion to their respective ownerships. *Held,* that the agreement and the conveyances to the corporation should be construed as one instrument; that the corporation so formed did not take an absolute unqualified estate in the property so conveyed to it, but that it took the legal title in trust for the purposes declared in the agreement and in its articles, and that the grantors in the deeds were the beneficiaries of the trust, and that as to such corporation the rule of law embodied in section 309 of the Civil Code, prohibiting a corporation from dividing its capital stock among its stockholders, had no application.

ID.—TRUSTEE FOR STOCKHOLDERS.—A corporation may be formed for the purpose of holding property conveyed to it as a trustee for its stockholders.

ID.—AMENDMENT TO ARTICLES.—Where such agreement and articles of incorporation further provided that amendments to the articles might be made by the vote or written consent of stockholders representing at least four fifths of the capital stock, an amendment so made requiring an annual division of a certain sum among the parties interested is binding on a stockholder who did not consent thereto.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

James F. Peck, for Appellant.

Charles S. Wheeler, Alexander R. Baldwin, Mastick, Van Fleet & Mastick, and W. B. Treadwell, for Respondents.

SHAW, J.—Upon further consideration of this case upon rehearing before the court in Bank, we adhere to the opinion of Justice McFarland, formerly rendered in Department. In addition to what is there said, we add some remarks concerning the points urged upon the rehearing:—

1. The proposition that a corporation cannot, except in the manner provided by law, divide its capital stock among its stockholders, has no application to this case. The property formerly belonging to the firm of Miller & Lux, which was, by the successors in interest of that firm, conveyed to the newly formed corporation, also named "Miller & Lux," was, in no proper sense, within the meaning of the law and the public policy forbidding such division, the capital stock of that corporation. In order to determine the character of the estate which the corporation Miller & Lux held in that property it is necessary to consider together, as parts of one transaction, the deeds of conveyance of the respective parties to the corporation; the written agreement of the same parties, providing for the formation of that corporation with a prescribed form of articles of incorporation, and for the execution of said deeds conveying to it the said property, and the articles of incorporation under which that corporation was

formed. These instruments clearly show that the corporation did not take an absolute unqualified estate in the property so conveyed to it, but, on the contrary, that it took the legal title in trust for the purposes declared in the agreement and in its articles, and that the grantors in the deeds were the beneficiaries of the trust. The main purpose of the trust was the conversion of the property conveyed to it into money and the division of it, in that form, among the beneficiaries, who were also its stockholders, according to their interests. The other powers given to the corporation were merely incidental and subsidiary to the main purpose. It is of no consequence that the agreement does not use the words "trust," or "trustee," nor expressly declare that the corporation is to take and hold the property as trustee in trust. It does declare with much detail the purposes for which it shall take the property and the disposition thereof to be made by it; and these elaborate provisions show clearly and conclusively that the corporation took no interest, beneficial to itself, in the property, but only the title, custody, and control of it, for the benefit of others. The thing created by the entire transaction was, in fact, a trust, and the corporation was in fact constituted a trustee of the property, and it matters not that the agreement does not call it by that name.

The fact that the corporation did, as provided in the agreement, issue stock to each interested party, having a nominal par value equal to the estimated value of the interest of the particular person in the property conveyed to it, did not convert the trust property into the absolute property of the corporation, did not prevent it from becoming trust property, nor in any respect add to the estate of the corporation therein, nor to its powers to deal therewith. For convenience of distribution the nominal capital stock of the corporation was fixed at twelve million dollars, divided into one hundred and twenty thousand shares of the par value of one hundred dollars each. They could as well have been made worth one dollar each. Whatever their par value, they were intended only as mere denominators to indicate the interests of the respective grantors in the Miller & Lux partnership assets included in the scheme of distribution, and the proportions of the proceeds to which they would be entitled. The payment to each stockholder of his *pro rata* share of the property, as

fast as it was converted into money, as the agreement pro-
vided, was, therefore, not a division of the capital stock of the
corporation among its stockholders, but a mere distribution of
the trust property in accordance with the terms of the trust.

It is urged that the stock was to be issued as fully paid
stock, and that if in truth nothing was received for it except
the property taken in trust, the beneficial interest in which
still remained in the grantors, the scheme would be unlawful
(Const., art. XII, sec. 11; Civ. Code, sec. 359), and that,
therefore, there could not have been an intention to create
a trust. The law forbidding the issuance of stock except for
value is for the benefit of creditors and to secure equality
among stockholders. The plan here adopted does no injustice
to any stockholder, all of them having agreed to it with full
knowledge of all the facts, and being on an equal footing.
The rights of creditors are not involved in this action. The
corporation and its stockholders may be estopped, as against
creditors, to deny the liabilities to be implied from the form
of its organization, as if the stock was actually paid up to its
par value, but we think the intention to convey a mere trust
estate to the corporation is so clear that it must be given that
effect, even if it is inconsistent in some particulars with the
provisions of the law governing corporations. That a corpora-
tion may be formed for such a purpose is clear. (Civ. Code,
sec. 286.) The principle that it may lawfully be a trustee
of property, holding no beneficial interest therein, as to its
stockholders, though it may be otherwise as to creditors, is
recognized in *Shorb* v. *Beaudry,* 56 Cal. 450; *Chater* v. *San
Francisco etc. Co.,* 19 Cal. 247; *Hunt* v. *Davis,* 135 Cal. 34,
[66 Pac. 957]; *Cornell* v. *Corbin,* 64 Cal. 200, [30 Pac. 629];
*Clute* v. *Loveland,* 68 Cal. 258, [9 Pac. 133]; and *Behlow* v.
*Fischer,* 102 Cal. 215, [36 Pac. 509].

In this case the trust was declared and created by the
"instrument under which the trustee claims the estate af-
fected," as provided in subdivision 2 of section 852 of the
Civil Code. That instrument consists of the deeds conveying
the property to it and the previous agreement in pursuance
whereof they were made, which must all be read together as
one instrument. It was not necessary that the corporation
should sign a declaration of the trust, as provided in sub-
division 1 of that section.

2. It was contended in the petition for rehearing that there was no power to amend the articles of incorporation so as to provide for the annual division of at least three hundred and sixty thousand dollars among the parties interested, or so as to require the sale of sufficient property for that purpose. The point is not well taken. The original agreement provided that, as to the subdivisions numbered 7 to 11, inclusive, of the agreement, and the corresponding subdivisions of the articles of incorporation, amendments could be made by the vote or written consent of stockholders representing at least four fifths of the capital stock. This was binding on the appellant, and such amendments could be made by four fifths of the stockholders without her consent and against her will. The amendment made was germane to the subjects covered by the subdivisions above mentioned. Subdivision 10 of the original articles provided "that the net profits of the corporation shall be divided in money, at least annually, among the stockholders, as dividends." Subdivisions 2 and 9 declared, in effect, that the "profits" and "dividends" to be divided annually were to consist of the excess of the proceeds of the property over the debts and expenses. Subdivision 10 was amended so as to declare that the sum of three hundred and sixty thousand dollars was to be so divided annually, and that if the "earnings" of the corporation, which we understand to mean the net proceeds of the property converted into money, should prove insufficient to make up that sum, it should be raised by sales of property. The corporation had power to make sales to that amount, at the discretion of its directors, without the amendment. The only effect of the amendment was to make it obligatory instead of discretionary. We think this was clearly an amendment to the section, as contemplated by the power of amendment given in the original agreement, and is binding on the appellant.

We do not consider the other objections urged as sufficiently important to require notice.

The judgment is affirmed.

McFarland, J., Henshaw, J., Lorigan, J., and Angellotti, J., concurred.

The following is the opinion of Department Two, rendered on November 13, 1906, adhered to in the foregoing opinion:—

McFARLAND, J.—The plaintiff, as owner of fifty shares of the stock of the corporation known as Miller & Lux brought this action against said corporation, and its directors and all its stockholders other than plaintiff. The purpose of the action is to have the corporation and its directors ordered to pay the sum of three hundred and sixty thousand dollars to the stockholders, and to pay, as his proportion thereof, the sum of one hundred and fifty thousand dollars to plaintiff, also to have it judicially determined and declared that said corporation carry out and perform the obligation imposed on it by a certain agreement of the date of February 6, 1903, and by the amended articles of incorporation, to annually, on April 1st until the year 1907, make payment and distribution of three hundred and sixty thousand dollars to the stockholders in proportion to their shares of stock, the first payment being in the year 1902; to have it adjudged and declared that certain amended articles of incorporation are lawful, valid, and binding; and to have other relief adjudged. Two of the directors answered, admitting the averments of the complaint and united in the prayer thereof. The corporation of Miller & Lux, and the other directors, answered, admitting the averments of the complaint, and averring their willingness and readiness to pay said sum of three hundred and sixty thousand dollars in the year 1902 and the subsequent years, and stating that the only reason for not doing so was their doubt of their power to make such payments, and asking the court to determine whether or not such payments would be legal. All the stockholders answered, joining in the prayer of the complaint, except Melissa A. Potter, who demurred to the complaint, and filed an answer and cross-complaint, in which she contested and denied the validity of the proposed distribution of the three hundred and sixty thousand dollars among the stockholders. The judgment was for plaintiff and substantially in accordance with the prayer of the complaint. From this judgment the defendant, Melissa A. Potter, appeals. There is no appeal by any other party or person.

The transcript consists of the judgment-roll, a considerable amount of documentary evidence, and some stipulated facts; but, as appellant makes only one point for reversal, a brief summary of the facts will be sufficient for the purposes of this decision.

On the fifteenth day of March, 1897, and continuously for many years prior thereto, there was in existence a copartnership consisting of Henry Miller and Charles Lux, which did business under the firm name of Miller & Lux. This firm owned a large amount of real and personal property, consisting mainly of lands, water-rights, and livestock; and it conducted a large business in buying, raising, and selling cattle and other livestock, and carried on both a wholesale and retail butchering business, and raising fruit and doing other kinds of farming. On said fifteenth day of March, 1897, this copartnership was dissolved by the death of said Charles Lux, and all its property passed into the ownership of a large number of persons who held the same as tenants in common. These owners were desirous of closing the business of the late firm and dividing the property among themselves in proportion to their interests, but found that this could not be done immediately without great loss. Therefore, all these cotenants entered into a certain written contract, marked Exhibit A. In this contract it was stated, among other things, that: "Whereas the parties hereto are desirous of settling and liquidating the said business and of selling all the property of said late copartnership, and converting the same into money, and dividing the same between the parties hereto in proportion to their respective interests; but, owing to the long continued depression in business and the great amount of property owned by said partnership, and the complicated nature of the business thereof, it will probably require an extended period to complete such liquidation, during which period it will be necessary, in order to prevent depreciation of the said property and other losses, to continue to carry on the business of said late partnership:

"Now therefore, for the purposes of carrying out the objects aforesaid, the parties hereto do covenant and agree each with the others:

"That the parties hereto shall cause to be formed under the laws of the state of California, a corporation, under the name and style of Miller & Lux, for the purpose of acquiring the property of the said late firm of Miller & Lux, and of gradually disposing of the same as speedily as, in the judgment of a majority of the board of directors of said corporation, such disposition can fairly and advantageously be effected,

and of dividing the proceeds thereof among the stockholders; and in the meantime, and solely for the purpose of avoiding depreciation in the value of said property and consequent loss, the said corporation shall, as subsidiary to said main purpose, carry on the said business of the said late copartnership." It was further provided in the contract that the tenants in common shall convey all their respective rights in said property to said corporation, and that the stock of the corporation should all be issued to said cotenants in proportion to their ownerships. The contract was completed by the formation of said corporation of Miller & Lux, the conveyance of the property to the corporation, and the issuance of its stock to the said copartners. It was provided that the articles of incorporation, which were adopted, might be amended by the unanimous vote of all the directors and the vote or written consent of stockholders representing at least four fifths of the stock. Afterwards, by the unanimous vote of the directors and the written consent of the stockholders representing more than four fifths of its stock, the articles of incorporation were amended so as to provide that annually, on the first day of April, 1902, and annually thereafter on the first day of April, until the year 1907, there should be divided and distributed to the stockholders, in proportion to their shares, the sum of three hundred and sixty thousand dollars, and that if the profits in any one year did not amount to that sum, then the balance should be procured by sales of assets of the corporation. The appellant, Potter, did not agree to these amendments. It was further provided that the proceeds of sales of lands of the corporation should be considered as profits and divided among the stockholders.

The corporation, the directors, and the stockholders also entered into a written contract by which "the corporation" covenanted and promised to divide annually among the stockholders the said sum of three hundred and sixty thousand dollars, as provided by the amended articles. No rights of creditors are involved in the case; and it appears among the stipulated facts that the property and assets of the corporation exceed in value the amount of twelve million dollars over and above all debts and liabilities.

We think that the foregoing is a sufficient statement of the facts for the determination of this appeal. The only point

which appellant makes in her short brief is stated therein as follows: "The amended articles expressly provide for a violation of law, and the judgment of the court does so also. The authorities are practically unanimous that the capital of a corporation, except upon dissolution, cannot be distributed among the stockholders." To this statement section 309 of the Civil Code and other authorities are cited.

Respondent contends that, under any view, the appellant is not an aggrieved party, and is not in a position to contest the validity of the proposed distribution, because her predecessor in interest signed the original contract and articles of incorporation which provided that the articles might be amended in manner as they were afterwards amended; but we do not consider it necessary to discuss this contention, or to pass upon certain other contentions of respondent, because, in our opinion, the contention that section 309 of the Civil Code does not apply to the case at bar must be maintained. Said section relates to the "powers of directors," and that part of it which is material here is as follows: "The directors of corporations must not make dividends, except from the surplus profits arising from the business thereof; nor must they create any debts beyond their subscribed capital stock; nor must they divide, withdraw, or pay to the stockholders, or any of them, any part of the capital stock, except as hereinafter provided, nor reduce or increase the capital stock, except as herein specially provided. For a violation of the provisions of this section, the directors under whose administration the same may have happened (except those who may have caused their dissent therefrom to be entered at large on the minutes of the directors at the time, or were not present when the same did happen) are, in their individual or private capacity, jointly and severally liable to the corporation, and to the creditors thereof, to the full amount of the capital stock so divided, withdrawn, paid out, or reduced, or debt contracted; . . . provided, however, that where a corporation has been heretofore or may hereafter be formed for the purpose, among other things, of acquiring, holding and selling real estate, water and water-rights, the directors of such corporation may, with the consent of the stockholders representing two thirds of the capital stock thereof, given at a meeting called for that purpose, divide among the stock-

holders the land, water, or water-rights so by such corporation held, in the proportions to which their holdings of such stock at the time of such division entitle them." It is to be observed that this section is aimed at the directors alone, and evidently relates to an ordinary corporation organized for the purpose of continuously carrying on some business as a going concern, and its purpose is to prevent the directors of such corporation from, of their own motion, distributing and crippling such business by diminishing the capital stock and thus lessening the capacity of the corporation to successfully carry on its business. And the section does not make such acts of the directors void, but declares merely that certain consequences shall follow such acts,—namely, that the directors shall personally be liable "to the corporation" and the creditors for the amount of the capital stock so divided. But the section does not restrain "the corporation" from paying dividends out of the capital stock, and has no reference to a case, like the one at bar, where the main purpose of the corporation, expressed in the contract for its organization and declared in its articles of incorporation, is to distribute the property of the corporation to the stockholders, and to liquidate its business as speedily as liquidation could be accomplished without loss to the owners. To say that this could not be legally done is to say that a corporation cannot be legally organized for such purpose—a proposition not maintainable. "Private corporations may be formed for any purpose for which individuals may lawfully associate themselves." (Civ. Code, sec. 286.) The owners as tenants in common of the property and assets of the former copartnership of Miller & Lux, being desirous of closing the business as soon as possible and dividing the property, could have formed a new partnership for that purpose, although it would have been an unwieldy method of accomplishing the result; or, they could have appointed natural persons as their agents for liquidation and distribution. They concluded, however, to create a corporation as their agent, to carry out their said intentions as to said property and business; and there was no legal obstacle to their adopting this plan. (See *Underhill* v. *Santa Barbara Co.*, 93 Cal. 300, [28 Pac. 1049], and authorities there cited; *Chater* v. *San Francisco Sugar Co.*, 19 Cal. 219; *Shorb* v. *Beaudry*, 56 Cal. 446.) The judgment in the case at bar is

founded upon the agreement and contracts of the organizers of the corporation, and of their agent, the corporation itself; and the distribution of the three hundred and sixty thousand dollars annually for a certain period will not be the result of any misconduct of the board of directors.

The judgment appealed from is affirmed.

Lorigan, J., and Henshaw, J., concurred.