[S. F. No. 5149—Department Two.—November 24, 1909.]

SAMUEL SHANNON, Respondent, v. R. L. CHENEY, Defendant and Respondent; SAN FRANCISCO STOCK AND EXCHANGE BOARD et al., Defendants and Appellants.

STOCK EXCHANGE — SEAT IN IS PERSONAL PRIVILEGE — SALE OF SEAT SUBJECT TO BY-LAWS OF EXCHANGE.—There can be no sale of a "seat" or the privilege of transacting business in a stock exchange except in subordination to the rules of such exchange. This privilege, so far as it is property at all, is subject to the conditions and qualifications · which entered into and became an incident in the property when it was created, and remains part of it into whomsoever hands it may come.

ID.—FORCED SALE OF SEAT.—Such a seat, being a mere right to belong to the association with the latter's consent, and to enjoy certain personal ₀privileges and advantages which flow from membership therein, cannot be transferred without the consent of the association, and a forced sale of the seat would not give the purchaser the right to occupy the seat.

ID.—RIGHTS OF ASSIGNEE OF SEAT.—The assignee of a seat in such an exchange, takes it subject to the provisions of the constitution and by-laws of the exchange, and acquires no greater right than that which his assignor possessed.

ID.—DISTRIBUTION OF PROCEEDS OF SALE OF SEAT BY EXCHANGE—REQUIREMENTS OF BY-LAWS—FILING OF CLAIMS.—Where the constitution of such exchange provides that "a person not a member of the board shall have the right to bring a claim against a member arising from any transaction in stocks or money loaned during his membership," in a certain manner there stated, "and not otherwise," and its by-laws provide that "all claims of members and non-members against said delinquent member must be filed with the secretary of the board within a time limited," and that no claims unless so filed will ever be considered or enforced by the board, a general creditor of a member, who entirely omits to file his claim with the board, is debarred from participation in any award by the board of the proceeds of the sale of the seat of such member, made in accordance with other provisions of the by-laws.

ID.—PRESIDENT AS ˚ TRUSTEE OF PROCEEDS—ACTION BY GENERAL CREDITOR TO REACH PROCEEDS—PARTIES.—Where under the constitution of such exchange, the president thereof is made a trustee of the proceeds of the sale of the seat of a delinquent member, for distribution amongst his creditors who have filed claims in accordance with the by-laws, a general creditor of such member, who never filed his claim, cannot maintain an action against the president and

the board, to reach an alleged surplus of such proceeds remaining after the payment of the filed claims, without making such creditors. parties to the action. In such action, a personal judgment against the president is erroneous.

ID.—SUPPLEMENTAL PROCEEDINGS TO REACH PROCEEDS.—There being no privity of contract between the exchange and a general creditor of a member to whom his seat has been assigned as security, the latter cannot maintain an action against the board to recover the proceeds. of the sale by it of such seat. The proper remedy of such assignee is by supplemental proceedings after judgment against the member, to participate in the trust fund, to which all the claimants. against the fund are made parties.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Aitken & Aitken, for Appellants.

Roger Johnson, for Respondent.

MELVIN, J.—Plaintiff brought this action to collect from defendant Cheney a debt amounting to something more than two thousand dollars, evidenced by four promissory notes and secured by what purported to be an assignment of said Cheney's seat in the San Francisco Stock and Exchange Board. The original defendants were the Stock and Exchange Board, Mr. Cheney and certain others described by fictitious names. A personal judgment against defendant Cheney was prayed for, and the court was asked, in addition to the usual request for general relief, to appoint a receiver to sell the seat and to apply the proceeds of such sale toward the payment of the debt and costs. The Stock and Exchange Board answered, alleging that under its constitution and laws the seat of defendant Cheney had reverted to the board upon the failure of Cheney to pay certain claims of members against him, found by the board's committee to be due; and that these claims amounted to more than the value of the seat in question. The defendant Cheney appeared and confessed judgment. By permission of the court, plaintiff filed a supplemental complaint, making A. B. Ruggles, as president of the Stock and Exchange Board, a party defendant; alleging that

since the commencement of the action said Ruggles, pretending to act by authority of the board and the provisions of its constitution, had sold the seat in question for an amount greater than plaintiff's claim; and praying for a personal judgment against said Ruggles, as well as one against the board. Judgment was rendered as prayed in favor of plaintiff. Appeals therefrom and from an order denying their motion for a new trial are taken by the San Francisco Stock and Exchange Board and by A. B. Ruggles.

The constitution of the Stock and Exchange Board contains, among others, the following provisions: "Any member failing to meet his engagements in the board shall be suspended until he has settled with his creditors." "Any member who has been suspended for six months, and who has not made a satisfactory settlement of his contracts in the board during that time, shall be deprived of all privileges of membership, and his seat shall revert to the board. . . . Whenever any member shall have been deprived of all privileges of membership . . . the president of the board shall call a meeting of the creditors in the board of such person, who shall thereupon present to him their several claims against the delinquent, and the president in all such cases shall be *ex officio* a trustee for such person and for his creditors in the board, and the said trustee shall be vested with all the rights and privileges formerly held by such person in the board, and shall dispose of the same in the same manner that a person retiring in good standing may dispose of his seat and privileges. The proceeds of any such disposition so made shall be devoted by the said trustee to discharging the obligations due by such person to members of the board, and any surplus remaining shall, after having satisfied all other claims against him, be delivered to the delinquent or to any person authorized to receive the same." It is further provided in the constitution that the proceeds of sales of seats shall be applied to the benefit of members exclusive of outside creditors "unless there shall be a balance after the claims of the members are paid in full," and that the seat and privileges of every member during his connection with the board shall be deemed "a continuing security to all members of the board with whom he may deal, according to its rules for the performance of his contracts and the fulfillment of his engagements." The court found that

the constitution and by-laws of the board contained the provision set forth in the answer prior to April 10, 1907, when the new constitution and rules were adopted; that defendant Cheney agreed to be bound by the constitution and by-laws while a member but not otherwise; that the claim of Hinkle, another member of the board, against defendant Cheney, was filed September 27, 1906; that thereafter a committee of arbitration acted, reporting to the board Cheney's indebtedness to Hinkle in the sum of $2112.50; that the report was adopted by the board, and Cheney was suspended on October 10, 1906; that within thirty days thereafter claims against Cheney, aggregating more than thirty-nine hundred dollars, were filed with the board, but that none of them arose from the failure of said Cheney to comply with his engagements in the board; that plaintiff had never filed any claim with said board; that Cheney failing for six months after October 10, 1906, to settle any claims against him, was on April 10, 1907, deprived of all privileges of membership in the board; that in May, 1907, after the commencement of this action, a committee appointed to adjust all claims filed against Cheney, reported that he owed the amounts demanded, aggregating $6697, but that said report was never presented to nor adopted by the board; that on June 30, 1907, Ruggles sold the seat for fifty-five hundred dollars; and that no other proceedings had ever been taken by the creditors in the board to establish or to enforce their claims against R. L. Cheney.

That there can be no sale of a "seat" or the privilege of transacting business in a stock exchange except in subordination to the rules of such exchange is too well settled to require very much discussion. This privilege, so far as it is property at all, is subject to the conditions and qualifications which "entered into and became an incident in the property when it was created, and remains part of it into whose hands soever it may come." (*Hyde* v. *Woods*, 94 U. S. 523.) It is "a personal privilege of being and remaining a member of a voluntary association with the assent of the association." (*Lowenberg* v. *Greenebaum*, 99 Cal. 162, [37 Am. St. Rep. 42, 33 Pac. 794].) Or, as expressed in the case of *San Francisco* v. *Anderson*, 103 Cal. 70, [42 Am. St. Rep. 98, 36 Pac. 1034]: "It is a mere right to belong to a certain association with the latter's consent, and to enjoy certain personal privileges and

advantages which flow from membership of such association. Those privileges and advantages cannot be transferred without the consent of the association, and a forced sale of them would not give to the purchaser the right to occupy said seat." Cheney's property in the seat being, therefore, qualified, and subject to the provisions of the constitution and by-laws, plaintiff Shannon could take by the attempted assignment no greater right nor superior ownership than that which his assignor possessed. Examining that constitution, we find a provision that "a person not a member of the board shall have the right to bring a claim against a member of the said board arising from any transaction in stocks or money loaned during his membership," in a certain manner there stated "and not otherwise." There is no showing that plaintiff ever complied with this requirement. The by-laws provide that "all claims of members and non-members against said delinquent, member must be filed with the secretary of the board within thirty days after the adoption of the report" (recommending suspension), and "no claims, unless filed within thirty days . . . will ever be recognized or enforced by the board." The findings of the lower court show that Shannon failed to present his claim within the limit of time above mentioned, or at all. This would bar him from participating in the award of the board, if any, based upon claims of members and other persons, duly filed. He must, therefore, have recourse to his remedy as a general creditor of defendant Cheney to the surplus, if any there be, after the sale of the seat and the payment of claims duly filed and adjudicated, according to the constitution and by-laws of the board. The findings of the superior court are in substance that there was such surplus, because it has adjudged that the claims, except that of Hinkle, were not debts arising from the failure of Cheney to comply with his engagements in the board, and that there had never been any action of the board with reference to the report of the committee to the effect that Cheney was indebted to all of the claimants. But these adverse claimants are not parties to this action. They have had no day in court. Yet the findings exclude them from participation in the fund realized from the sale of Cheney's seat held by Ruggles as *trustee* under the provision of the constitution quoted herein. If Shannon could maintain any action against defendants

Ruggles and the board, he could only do so by making the various claimants parties. The trustee is here confronted with a personal judgment on the one hand, and, on the other, a finding of the board's committee, which the board may perhaps adopt, that sums in excess of the trust fund are due to members. To be sure, the court in this action has found that some of these creditors have not perfected their claims, but as they are not parties they are not bound by that judgment, and may in another action establish their rights to the fund in question. For his protection and in justice to him, they should be made parties. (*Deering* v. *Richardson-Kimball Co.,* 109 Cal. 83, [41 Pac. 801].) The personal judgment against Ruggles is clearly erroneous.

But as Shannon is a general creditor of Cheney, and as there is no privity of contract between him and the Stock and Exchange Board, this action will not lie against that association nor its president. The proper course of plaintiff would be by supplemental proceedings after judgment against Cheney, to participate in the trust fund, and even that he could not do without bringing in all the claimants. (*Matteson etc. Mfg. Co.* v. *Conley,* 144 Cal. 483, [77 Pac. 1042].)

Other questions are presented by the record, but we do not think they need be discussed, in view of our conclusions with reference to plaintiff's *status* as a claimant of a part of the fund realized from the sale of defendant Cheney's privileges as a member of the Stock and Exchange Board.

The judgment is reversed and the cause remanded.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.