[Civ. No. 1740. First Appellate District.—February 29, 1916.]

## STUART A. HASSEY, Administrator, etc., Respondent, v. MARY A. RUGGLES, Administratrix, etc., et al., Appellants.

SAN FRANCISCO STOCK AND EXCHANGE BOARD—OWNERSHIP OF PROPERTY. The property purchased by the San Francisco Stock and Exchange Board at an early date in the history of the association by contributions and fees of membership for the purpose of having a building for the convenience of the members and their business was in equity the property of such members, notwithstanding that the title thereto was taken in the name of a corporation composed entirely of such members known as the Company of Associated Stockholders, which had no other purpose for existence than to hold the legal title to the property and manage the same for the benefit of the members of the board.

ID.—RELATIONSHIP BETWEEN MEMBERS AND BOARD—"SEAT."—Under the articles of agreement creating the San Francisco Stock and Exchange Board, the rights and equities of its members with respect to the assets, and the particular advantages which accrued to each member thereof, were all comprised and defined by the terms "the seat and privileges of membership," and each member in good standing could dispose of his "seat," and with the consent of the board introduce his successor in interest into the body of its membership, and in case of the death of a deceased member the board itself was given the right and charged with the duty of disposing of the "seat" for the benefit of the widow and children of the deceased member; and in case of a delinquent member, the president of the board became invested with a trusteeship over the "seat," with power of disposition and of distributing the proceeds among those of his fellow-members who were creditors.

ID.—DIVISION OF PROCEEDS — AGREEMENT OF LIVING MEMBERS — SHARE OF DECEASED MEMBER—WAIVER.—The execution of a written agreement, after the sale of the property, by all the living members of the board to divide the proceeds of the sale among themselves and the representatives of deceased members, gives the representative of a deceased member, who did not sign such agreement, an equal advantage with one who did, where it appears that the former was

not given an opportunity to sign or participate in its benefits, as the execution of the agreement constituted a waiver on the part of the living members to any portion of the share of such deceased member.

ID.—SALE OF PROPERTY—PROPORTIONATE SHARE OF PROCEEDS OF DECEASED MEMBER IN GOOD STANDING—DISTRIBUTION AMONG CREDITORS—ILLEGAL ACTION OF PRESIDENT OF BOARD.—Upon a sale of the property of the San Francisco Stock and Exchange Board, the president of the board to whom was paid over, as trustee, the proportionate share of the proceeds of the sale belonging to a deceased member, has no right to distribute the same among the asserted creditors of the deceased, where such member was in good standing at the time of death and had not disposed of his "seat" in the board.

ID.—ACTION TO RECOVER SHARE—FINDINGS—EQUITABLE INTEREST—CONTINUING SECURITY.—In an action by the administrator of the estate of the deceased member of such board to recover the share of the proceeds of the sale to which said estate is entitled, the issue that under the constitution and by-laws of the association the equitable interests of every member therein shall be and remain a continuing security to all members of the board with whom he might deal for the performance of his contracts and the fulfillment of his obligations, is covered by the finding that the deceased was in good standing and owed no obligations to the members thereof.

ID.—INDEBTEDNESS OF DECEASED MEMBER TO FELLOW-MEMBERS—IMMATERIALITY—EFFECT OF WAIVER.—The question whether or not the deceased member at the time of his death was indebted to his fellow-members in any sum is not material, by reason of the waiver of any claim to any portion of the share of such member from the execution of the agreement.

ID.—PARTY PLAINTIFF—SUBSTITUTION OF HEIR FOR ADMINISTRATOR.—In such an action the defendants cannot contend that the administrator had no authority to bring the action, or that the judgment was in favor of a person not an original party to the action, by reason of the substitution of the only heir of the deceased as plaintiff without objection.

ID.—JUDGMENT — MEMBERS OF BOARD AND PRESIDENT. — A judgment in such action against all the members of the board as well as its president is proper, where it is shown that at all times such president was the authorized agent of the board.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.   James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Aitken & Aitken, for Appellants.

Cushing & Cushing, and Grant & Zimdars, for Respondent.

RICHARDS, J.—This is an action originally commenced by the plaintiff as the administrator of the estate of F. A. Hassey, deceased, against A. B. Ruggles and a number of other persons comprising the membership of the San Francisco Stock and Exchange Board, an unincorporated association, to recover the sum of four thousand dollars.

The facts out of which this alleged indebtedness arose are substantially undisputed. The San Francisco Stock and Exchange Board was organized in the year 1862 by the voluntary association of its members for the purpose of mutually facilitating the business in which they were severally engaged. Articles of agreement creating the association were adopted which formed, and still form, its constitution and by-laws, and set forth the object and functions of the association, the powers and duties of its officers, and the rights and privileges of its membership. By the terms of these articles of agreement it was provided that the legal title and ownership of all the property, effects, and assets of the association should vest in its officers in trust for the benefit and enjoyment of its members; that no member under any circumstances should be deemed to have or claim or possess any individual right, title, or interest in the property or assets of the association except when the same should be finally dissolved and its effects distributed among its remaining membership; that in the event of the death of a solvent member the board should dispose of his vacant seat to the best advantage for the benefit of his widow and children, or of those persons who should be designated by him in his last will and testament as entitled thereto, provided that no nominee of a retiring or deceased member should acquire any right to such seat or privileges of membership until elected thereto as provided by the constitution; that in the event of the suspension or delinquency of a member his seat and privileges of membership should revert to the board, the president of which was in such event constituted a trustee, with authority to sell the said seat and privileges of such delinquent member, and devote the proceeds of such sale to the discharge of the obligations to his

creditors among his fellow-members of the association. It was further provided that the seat and privileges of every member should be deemed and taken to be, as long as he remained a member, a continuing security to all members of the board with whom he might deal according to its rules for the performance of his contracts and the fulfillment of his engagements.

The record in the present cases discloses that F. A. Hassey became a member of the association a few years after its formation, and continued to be such member thereof up to the time of his death in the year 1897, and that at the said time of his death said F. A. Hassey was a member in good standing therein, and had not been suspended or declared delinquent, nor had his seat or privileges therein ever been sold either for the benefit of his heirs or his creditors among his fellow-members of the board, or otherwise. The record in the present case further discloses that at an early date in its history the association, desiring for the convenience of its members and their business a building, purchased a certain property, raising the purchase price therefor by contributions and fees of membership. At the time of this purchase it was deemed advisable to form a holding corporation in order to take the title and manage the said property. This was done; a membership corporation known as the "Company of Associated Stockbrokers" was formed, having no capital stock, and with its membership limited to the members of the San Francisco Stock and Exchange Board, and which corporation had no other purpose for existence than to hold the legal title to the property and manage the same for the benefit of the members of said board. The property thus purchased and held was retained until the year 1903, when it was sold for the net sum of two hundred and seventy thousand dollars. Thereupon the then living members of the San Francisco Stock and Exchange Board concluded to divide said sum of money among themselves and among certain successors of deceased members, and accordingly there was caused to be prepared and executed a receipt in the following form:

"San Francisco, Cal., July 24, 03.

"Received of the Company of Associated Stock Brokers the sum of three thousand dollars ($3,000.00) being my proportion of the sum of $270,000.00 distributed by the said com-

pany as part of the proceeds realized from its real estate on Pine street in San Francisco.

"And I do hereby ratify each and every act done by said corporation or its directors or officers in connection with said sale and distribution; and I hereby consent that in said distribution all of the owners of seats, whether delinquent or otherwise in the San Francisco Stock and Exchange Board, shall be recognized as entitled to participate in said distribution. And I hereby waive and release all interest in or claim to the proceeds of said sale except as paid to me herewith.

"(Signed)................"

Upon signing the foregoing receipt each of the members of the association executing the same received the sum of three thousand dollars, and every member of the association, or the representatives of the deceased members thereof, signed the said receipt and received the said sum of three thousand dollars as his or their proportionate share in the division of said larger sum of money, except the estate or legal representatives of F. A. Hassey, deceased, who were not given an opportunity to sign and execute said receipt and who received no portion of said sum of money. Instead, the said Company of Associated Stockholders paid over the sum of three thousand dollars, representing the Hassey share in the aforesaid division, to A. B. Ruggles, who received the same as the president of the San Francisco Stock and Exchange Board, and who, while admitting the receipt of said money, refused to pay over any portion thereof to the estate or legal representatives of F. A. Hassey, but, on the contrary, claimed and exercised the right to distribute the same among certain persons whom he asserted, and now asserts, to have been the creditors of said F. A. Hassey at the time of his death; and this action having been thereafter brought, he and his fellow-defendants herein undertook to justify such refusal and action on his part upon said ground and under the provisions of the constitution and by-laws of the association above set forth.

The trial court rendered judgment in favor of the plaintiff as the successor in heirship and interest of said F. A. Hassey, deceased, and against all of the said defendants for the said sum of three thousand dollars, with legal interest up to the time of such judgment; and from such judgment and the

order denying the defendants' motion for a new trial they prosecute this appeal.

The chief and, in fact, the only substantial contentions of the appellants herein are that the evidence in the case is insufficient to sustain the findings of the court, and that the findings in their turn do not support the judgment. A careful examination of the record, however, convinces us that the foregoing facts are fairly deducible from the evidence in the case, and they are substantially set forth in the findings with certain immaterial exceptions to be hereafter noted; and hence that the only real issue before us is as to whether the findings support the judgment.

The solution of this question will depend upon the answer to be given to the following inquiries: (1) What interest did F. A. Hassey have during his lifetime in the particular property of the San Francisco Stock and Exchange Board the title to which was held by the Company of Associated Stockbrokers, and from the sale of which the money was derived, for his proportionate share of which his successor in interest brings this action? (2) What effect did the execution of the receipt and agreement of the several members of the association other than F. A. Hassey, executed by them upon the distribution of said money, have upon his right or that of his successor in interest to recover in this form of action?

The relation between the members of the San Francisco Stock and Exchange Board and the Company of Associated Stockbrokers was considered in the early case of *Clute* v. *Loveland,* 68 Cal. 254, [9 Pac. 133], wherein it was decided that the property standing in the name of the latter corporation was in equity the property of the members of the said Stock and Exchange Board. This being the case, and the membership of said corporation being composed wholly of the membership of the said board, the existence and actions of the said corporation as to the holding or disposing of this particular property, and also as to the distribution of the proceeds of the sale thereof among the members of the said Stock and Exchange Board, who were at all times and in all forms the equitable owners thereof, becomes an immaterial factor; for the case stands as though the property at all times had been held in the names of the denoted officers of the Stock and Exchange Board who under its constitution and by-laws were invested with the title to all its property

in trust for the benefit of the membership of the unincorporated association. Under the articles of agreement creating the said Stock and Exchange Board, the rights and equities of its members with respect to the assets, and the particular advantages which accrued to each member thereof, were all comprised within and defined by the terms "the seat and privileges of membership." By its constitution and by-laws a retiring member in good standing could dispose of his seat and privileges of membership, and with the consent of the board might introduce his successor in interest into the body of its membership. In the case of a deceased member the board itself was given the right and charged with the duty of disposing of the seat and privileges of the deceased member for the benefit of his widow and children, or of those persons designated in his will as entitled thereto. In case of a member delinquent in the matter of keeping his contracts or paying his obligations as to his fellow-members, the president of the board became invested with a trusteeship over the seat and privileges of the said delinquent, with power to dispose of the same in the same manner that a person retiring while in good standing might dispose of his seat and privileges, and of distributing the proceeds of such distribution among those of his fellow-members who were his creditors. These provisions of the constitution bounded, defined, and limited the control of the members of the association over their equitable interest therein, and also bounded, limited, and defined the rights and powers of the board and its officers in respect of the equitable interests of delinquent members, as well as the method by which alone those powers and rights could be exercised. (*Shannon* v. *Cheney,* 156 Cal. 567, [105 Pac. 588].)

From this discussion the following conclusions logically result: If F. A. Hassey at the time of his death was a member of the board in good standing, and had not otherwise disposed of his seat and privileges therein, the board became invested with the right and duty of disposing of the same for the benefit of his widow and children or designated devisees; and in case the board failed to exercise this right or perform this duty, the heirs or successors in interest of said deceased could doubtless have compelled such action by some appropriate legal proceeding; and in such action the form in which the property of the board then was, whether real estate or money, would be

quite immaterial, for the reason that in every or any form it was comprised within the term by which the members of the board, in their articles of agreement creating it, had seen fit to define the equitable interests of each member therein, viz, "the seat and privileges of membership." So, also, in the case of a delinquent member, the only method by which his equitable interest in the properties and valuable privileges of the board could be distributed by the president of the board among those of his fellow-members who were his creditors was by a similar disposition of his "seat and privileges of membership," and any other method of disposing of or distributing the equitable interest of the delinquent member in the property of the board or in any portion thereof would be illegal as outside of the articles of agreement and beyond the power of the president of the board, who was invested with a trusteeship over the said equitable interest of such delinquent member in such property.

Applying these conclusions to the facts of the instant case, it would necessarily follow that the attempted action of A. B. Ruggles, as president of said board, in the way of distributing the sum of three thousand dollars which had come into his hands as the trustee of whatever equitable interest the successors of F. A. Hassey, deceased, had therein, among certain persons who were asserted to be creditors of said F. A. Hassey, deceased, was illegal, and hence ineffectual either to divest the said A. B. Ruggles of the said fund, either in his capacity as trustee thereof or as the authorized agent of said board in its possession, and was also ineffectual to relieve said A. B. Ruggles or his fellow-members of said board of his or their duty to account for the same to the successor in interest of said F. A. Hassey in some appropriate form of action.

At this point, however, another element enters into the case affecting materially the rights of the members of the San Francisco Stock and Exchange Board in their relation to each other, and to their equitable interests in that particular portion of the property of said association which was derived from the sale of the real estate held for their benefit by the Company of Associated Stockbrokers. After the sale of said property and receipt of said money by said holding company, the living members of the San Francisco Stock and Exchange Board, being also the entire membership of said holding company, entered into the agreement to divide said money among

themselves, and also among the representatives of deceased members, which agreement is evidenced by the receipt above set forth, and which said receipt and agreement was signed by every living member of said board and by the representatives of every deceased member thereof except F. A. Hassey; and thereupon, in accordance wherewith, every member of said board or his successor in interest, with this single exception, received his or their proportionate share of said money, amounting in each case to the sum of three thousand dollars. By the terms of this writing and by its execution, the provisions of the original articles of agreement between the members of the association with respect to their rights and interests in this property—or rather, in this particular portion thereof—were altered to the extent that whereas, under their original agreement no member of the association had any divisible interest in any specific portion of its property prior to its final dissolution, the members thereof now agreed and undertook to presently divide this particular sum of money among themselves. That the members of an unincorporated association may, by the consent of all their number and by an appropriate writing, thus alter the terms of their original articles of association there can be no doubt. And if it is claimed that F. A. Hassey or his successor in interest, not having signed or executed such agreement, may not have or take an equal advantage therefrom, the answer is twofold: First, the record shows that the successor in interest of F. A. Hassey, deceased, was not given an opportunity to sign or execute this agreement or to participate in its benefits; and, second, that notwithstanding this fact the plaintiff has chosen to assent to it, and has manifested that assent by the institution of this action. And it further appears by the terms of said receipt and agreement that it was expressly made broad enough to include every member of the association, living or dead, within its terms, and thus to give to F. A. Hassey or his successor in interest not only the same right to a distributive share of this money which all of his fellow-members undertook to exercise, but also to constitute a waiver on their part of all right or claim to any portion of his share in said fund. The defendants herein, having thus admitted the right of F. A. Hassey, whether delinquent or not, to his equal distributive share of said money, and having expressly surrendered by said writing all of their interest therein, cannot

now be heard to claim either that said distribution was illegal, or that the successor in interest of said F. A. Hassey is not entitled to receive the proportionate share thereof which would otherwise have been the share of F. A. Hassey had he been a living member of said association at the time of the distribution of said fund.

The appellants make the further contention that the findings of the court to the effect that F. A. Hassey was not indebted to any of his fellow-members of the association at the time of his death, and hence had no creditors to whom the president of the board could lawfully have distributed the money in question, are entirely unsupported by the evidence in the case. The record upon this subject shows that it is averred by the complaint, and admitted by the defendants in their answer, that F. A. Hassey was at the time of his death a member of the board in good standing. It is also admitted therein that the particular sum of three thousand dollars received by the president of the association represents the share in the larger sum to which F. A. Hassey would have been entitled had he been a member in good standing having no creditors among his fellow-members of the association at the time of the distribution of said fund. These being the defendants' admissions, the burden was unquestionably cast upon them to show a rightful distribution of this money to persons other than F. A. Hassey or his successor in interest, who not only claimed or were asserted to be his creditors, but who were actually proven to have been such existing creditors at the time of his death. No such proof was proffered by the defendants; no showing was made that any claims of such creditors had been presented to the estate of Hassey; no single creditor was produced to testify that he was such; no evidence of such debts was presented; and whatever was said by the witnesses for the defendants upon the subject of Hassey's creditors was so evidently hearsay as to amount at most to no more than the statement of these witnesses that there were some persons who claimed to be creditors of Hassey, but of what nature or legality, or in what amounts these claims consisted, was nowhere stated. Under such conditions it is clear that the finding of the court can be justified by the absence of proof upon the subject.

But beyond this it affirmatively appears by reference to the receipt signed by every member of the board other than F. A.

Hassey or his successor in interest, and hence by every person who could have been his creditor among its members, that each and all of them expressly waived and released all claim to any portion of said money, and agreed that whether delinquent or not, F. A. Hassey or his successor in interest was entitled to said distributive share of said fund. This being so, it became immaterial whether or not F. A. Hassey was indebted to his fellow-members of said board in any sum whatever at the time of his death, and hence it is immaterial what the court found upon that subject.

The appellants further maintain that the court has failed to find upon the issue presented in their answer that under the constitution and by-laws of the association the equitable interests of every member therein shall be and remain a continuing security to all members of the board with whom he might deal for the performance of his contracts and the fulfillment of his obligations. A reference to the findings will show that such a clause existed in the constitution and by-laws of the association; and if any further finding upon the subject was necessary, it was covered by the finding of the court that at the time of his death F. A. Hassey was a member in good standing in said association and owed no obligations to any members thereof.

The appellants further contend that under the constitution and by-laws of the board, the equitable interest of a member thereof in the event of his death was not given to the estate of the deceased member, but was to be disposed of by the board, the proceeds of such disposition to go immediately to his widow and children, or to his devisees in case of a will; and that this being so, they have been sued by a plaintiff in the person of an administrator of the estate of F. A. Hassey, deceased, who was not entitled to sue. The appellants also contend that the judgment in this case has been made to run in favor of a person not originally a plaintiff therein, to wit, Stuart A. Hassey.

In view of the fact that it is averred in the last amended and supplemental complaint, filed by the plaintiff herein without objection on the part of said defendants, that F. A. Hassey was a widower at the time of his decease, and that Stuart A. Hassey was his only child, and that by proper proceedings in probate his estate has been distributed to said Stuart A. Hassey as his only son and heir; and these aver-

ments being admitted to be true by the defendants through their failure to deny the same, it would seem that their two last-named contentions are inconsistent; for, even if it be conceded that, strictly speaking, Stuart A. Hassey, as administrator of his father's estate, was not entitled to commence this action, he was confessedly entitled to do so as the only child and heir of F. A. Hassey; and since without objection at the time on the part of the defendants he was permitted to correct this error, if any, by the substitution of his name as plaintiff in his own right in his final pleading, we think that neither of the foregoing contentions of the appellants can now be maintained.

The appellants have presented a large number of assignments of errors of law on the part of the court committed during the trial; but an inspection of the record will reveal that the asserted merit of each of these assignments depends upon the acceptance of the appellants' theory of the case, which neither the trial court nor this tribunal has seen fit to adopt, and that otherwise there is no merit in any of these.

Finally, the appellants assert that the judgment herein should not have been rendered against any of the defendants other than the defendant Ruggles, for the reason that he is the only one of the defendants who is shown to have received the said sum of three thousand dollars; but the record shows indisputably that said Ruggles, at the time he received and claimed the right to disburse the said sum, was the president and authorized agent and representative of the entire membership of the board in so receiving and disbursing the same, and hence that for his action in the premises the members of the board must individually and collectively be held responsible.

No substantial error appearing, the judgment and order are affirmed.

Lennon, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 27, 1916.